CITY OF SUPERIOR and another, Appellants, vs. ALLOUEZ
BAY DOCK COMPANY, Respondent.
SAME, Respondents, vs. SAME, Appellant.

*April 25—June 28, 1917.*

*Taxation: Income tax not a burden on interstate commerce: Railroad*
*property: Ore dock used as terminal: Exemption from income*
*taxation: Corporations: Ultra vires: Action to recover unpaid*
*taxes: Costs.*

1. Although the amount of an income tax may be measured by the
   receipts of a business, it is not in any true sense a tax upon the
   business itself; and a state tax levied upon the income arising
   from an interstate business is not void as being a burden upon
   or interference with interstate commerce.
2. An ore dock used exclusively as a railroad terminal should be
   taxed as railroad property, even though owned and operated by
   a warehousing or dock corporation; and the income derived
   therefrom is, under sec. 1087m—5, Stats., exempt from income
   taxation.
3. The warehousing or dock company which operates such a termi-
   nal does not thereby violate its charter or commit any act *ultra*
   *vires;* but the business authorized by its charter is, under such
   circumstances, a branch of the railroad business, and for the
   purposes of taxation its property should be classified as rail-
   road property.
4. In view of sec. 1107a, Stats., providing that an action to recover
   unpaid taxes shall be "an action of debt," it seems plain that
   it was the legislative intention that any remedy in such an ac-
   tion should be a recovery as upon contract, and the costs therein
   are governed by sec. 2921, which provides that in actions at
   law upon contract the costs, exclusive of disbursements, shall
   not exceed $25.

APPEALS from a judgment and an order of the circuit court
for Douglas county: JAMES WICKHAM, Judge. *Affirmed.*

This is an action brought by the city of *Superior* and
county of *Douglas* to recover the sum of $100,310.04, being
the income tax assessed against the defendant in the year
1912 based on the income received by it in 1911. The de-
fense was in brief that for the purposes of taxation the de-

fendant was in legal effect a railway company under the terms of the Wisconsin statutes and hence not subject to income taxation.

The defendant is a Wisconsin corporation formed in 1903 under the provisions of ch. 86 of the Wisconsin Statutes for the purpose of constructing, purchasing, leasing, and operating docks, warehouses, piers, etc. It owned and operated large ore docks at *Superior* which formed the lake terminal of the Great Northern Railway Company, and on which all the iron ore brought in by said railroad from the Minnesota iron mines was received, the cars being switched upon tracks running out upon the elevated dock and there dumped immediately into lake vessels for transportation to Eastern ports, or deposited in pockets to be run into lake vessels a few days later. All the ore handled on the dock was consigned to Eastern lake ports, and no ore was handled save that which was brought in by the Great Northern Company. The property of the defendant consisted of a strip of land nine tenths of a mile long, connected at the south end with the right of way of the Great Northern Railway Company and extending northward into Allouez Bay and to the dock line thereof in the city of *Superior,* the improvements thereon consisting of four docks with pockets and appliances for handling ore, two main lines of railway tracks connected with the tracks of the Great Northern Railway, switch tracks running the whole length of the docks, elevated on trestlework seventy-three feet above the water line, on which tracks ore cars were moved by two switch engines owned by defendant, a railway signal tower, an office where several clerks were employed, and all the necessary equipment for operating the tracks and handling the ore cars and the ore. Prior to 1903 this property was owned by the Duluth, Superior & Western Terminal Company, there being then but two docks. In 1903 the defendant leased the property from the terminal company for ninety-nine years (there being then but two docks and a third

under construction), and at the same time made a contract with the Great Northern Railway Company providing that the latter company should run its ore cars and trains upon the docks and the defendant company should unload the ore and deliver it in boats, the railway company paying twenty-five cents per ton therefor. The business was conducted under this contract until November, 1908, when the defendant purchased the whole property, real and personal, from the terminal company. In August, 1909, a new agreement was made by the parties by which the defendant leased to the Great Northern Company its entire track system and locomotives, the latter company agreeing to keep the same in repair, switch and spot the cars, and remove the same when unloaded, the defendant company agreeing to unload the ore from the cars and load the same into vessels as directed, the railroad company paying twenty-two cents per ton for the ore actually handled and the defendant company repaying to the railway company any taxes which it might be obliged to pay on the leased property. This arrangement was in operation during the year 1911, and during that year there was handled over the docks more than 9,000,000 tons of ore, the net income therefrom being $1,671,834.01, on which sum the income tax in question was levied. The docks were always used as a part of the railroad system of the Great Northern Railway Company and as a terminal thereof. The defendant's stock was held by certain officers of the railway company for the benefit principally or wholly of stockholders of the railway company, and thus the defendant's property and business was always indirectly controlled by the railway company though owned by an entirely separate corporation.

The Wisconsin tax commission in 1905 assessed the defendant's property as railroad property under ch. 315 of the Laws of 1903 as amended (the *ad valorem* taxation law); and in the subsequent years up to 1911 the property was assessed in the same manner, except that in said later years it was

assessed to the Great Northern Company as a part of its system. After the passage of ch. 540, Laws 1911, for two years the tax commission in making its assessment against the Great Northern Company omitted the ore docks from the assessment and the same were locally assessed by the city of *Superior* under the terms of that act. After that act was declared void by this court in *Minneapolis, St. P. & S. S. M. R. Co. v. Douglas Co.* 159 Wis. 408, 150 N. W. 422, and pursuant to ch. 407, Laws 1915, the state tax commission reassessed to the Great Northern Railway Company the defendant's property which had been omitted as aforesaid. Both the defendant and the Great Northern Company have paid the taxes assessed against them by the Wisconsin tax commission (except the income tax here in dispute), including the aforesaid reassessment, and the city has received its share of the taxes resulting from the reassessment. The defendant has repaid the Great Northern Company its proper proportion of the taxes paid by it during the years when defendant's property was assessed as a part of the Great Northern system based upon the valuation of defendant's property. The defendant has brought actions which are still pending and undetermined to set aside the taxes locally assessed against it for the years 1912 and 1913 and has been obliged to pay the same as a condition of maintaining the actions.

The defendant on these facts contended that the tax in question was void because (1) it constituted a burden upon or interference with interstate commerce, and (2) the defendant's property was exempt from such taxation by the provisions of sec. 1087m—5, Stats. The circuit judge held against the defendant on the first question and in its favor on the second, and entered judgment setting aside the taxes, from which judgment plaintiffs appeal.

For the appellant *City of Superior* there was a brief by *H. V. Gard* and *T. L. M'Intosh* of Superior, and oral argument by *Mr. Gard*.

For the appellant *Douglas County* the cause was submitted on the brief of *Archibald McKay* of Superior.

For the respondent there was a brief by *J. A. Murphy*, attorney, and *E. C. Lindley*, of counsel, both of Superior, and a reply brief and oral argument by *Mr. Murphy*.

The following opinion was filed May 15, 1917:

WINSLOW, C. J.    As indicated in the foregoing statement there are two fundamental questions in the case, viz.: (1) Was the tax in question a burden upon interstate commerce? and (2) Was the defendant's property exempted from income taxation under the statutes of the state because it was railroad property?

1. It must be admitted that the defendant's income arose entirely from interstate commerce business.   The ore which it handled was all consigned from the Minnesota mines to lower lake ports and simply passed through the defendant's docks in its transit, the defendant receiving a fixed charge for its part in facilitating the continuous interstate voyage, namely, the transferring of the ore from the land carrier to the water carrier.   Is the levying of an income tax measured by the income so derived a burden upon interstate commerce?

The question is not free from difficulty, but we think it must be answered in the negative.   Income taxation is not taxation of property, but is more nearly akin to taxes levied upon privileges or occupations.   Its amount may be measured by the receipts of a business, but it is not in any true sense a tax upon the business itself.   The subject is covered, as it seems to us, by the decisions of this court in the cases of *United States G. Co. v. Oak Creek,* 161 Wis. 211, 153 N. W. 241, and *Northwestern Mut. L. Ins. Co. v. State,* 163 Wis. 484, 155 N. W. 609, 158 N. W. 328, and the cases therein cited.

2. Sec. 1087m—5, Stats., provides for the exemption of certain incomes from income taxation, among which are

named in sub. 3 of the section "Incomes derived from property and privileges by persons now required by law to pay taxes or license fees directly into the treasury of the state in lieu of taxes."

Railroad companies are required by law to pay taxes directly into the state treasury, and the defendant claims and the trial court held that it was to be considered a railroad company for the purposes of taxation and hence not subject to income taxation. We can see no escape from the argument. The law governing the taxation of public utilities provides (sub. (2), sec. 51.02, Stats.) that "Any person . . . or corporation owning and operating a railroad, . . . or owning or operating any station, depot, track, terminal, or bridge, in this state, for railroad purposes . . . shall be deemed a railroad company."

The ore dock under consideration here was unquestionably a terminal within the meaning of that section. *Minneapolis, St. P. & S. S. M. R. Co. v. Douglas Co.* 159 Wis. 408, 150 N. W. 422. It was used exclusively as a railroad terminal and hence should have been assessed and taxed as a railroad. It is said that it cannot be so taxed because the defendant corporation was not a railroad corporation, but a corporation organized for dock and warehousing purposes, and hence that it would be violating the law if it attempted to do a railroad business. The argument is fallacious. When a railroad operates a terminal itself, or when a terminal is owned by a third person or corporation and operated solely as a terminal for the railroad, it is as truly a part of the railroad as its trains, and its business as truly a part of the railroad business as the operation of the trains. No reason is perceived why, for the purposes of taxation, such property should not be classified as railroad property and subjected to the same methods of taxation. A warehousing or dock company which operates such a terminal does not thereby violate its charter or commit any act *ultra vires;* it does the business which its

charter authorizes it to do, but the state, perceiving that this business is, under such circumstances, simply a branch of the railroad business, directs that it be taxed in the same class with railroad companies. This was the conclusion of the trial court, and must be approved.

The court limited the costs to the sum of $25 and disbursements under that clause of the statutes which provides that in actions at law on contract the costs, exclusive of disbursements, shall not exceed $25. The defendant appeals from this ruling on the ground that an action to recover unpaid taxes is not an action upon contract, or, in other words, that an unpaid tax is not a debt or a contract. This abstract proposition may be conceded, but we do not regard it as controlling. Our statute which authorizes the bringing of the action provides that it shall be "an action of debt." Sec. 1107a, Stats. An action of debt at common law arose only to enforce contract rights. The legislative intention that any recovery in such an action should be a recovery as upon contract seems plain, and there seems no reason why effect should not be given to that intention.

*By the Court.*—The judgment and order appealed from are affirmed, the defendant to recover one bill of costs.

KERWIN and VINJE, JJ., dissent.

A motion for a rehearing was denied, with $25 costs, on June 28, 1917.