## SOUTHERN CALIFORNIA TELEPHONE CO. et al. v. HOPKINS, County Assessor, et al.

(Circuit Court of Appeals, Ninth Circuit. June 7, 1926. Rehearing Denied July 12, 1926.)

No. 4811.

1. Taxation ⬤⟜200—Leased instruments of telephone company paying gross earnings tax to state held not subject to local taxation; "operative property" (Const. Cal. art. 13, § 14; Pol. Code Cal. § 3665b).

Const. Cal. art. 13, § 14, provides, inter alia, that taxes on telephone companies shall be exclusively for state purposes, and that, such companies shall pay a tax upon their franchises "poles, wires, * * * and other property, or any part thereof, used exclusively in the operation of their business in this state," equal to a stated percentage of their gross receipts from operation, in lieu of all other taxes and licenses, state, county, and municipal. Pol. Code Cal. § 3665b, defines the operative property of a company as including telephone instruments, batteries, and other electrical appliances. Held, that the telephone instruments in operative use by a company which has paid its gross earnings tax are exempt from local taxation, and it is immaterial whether it owns or leases them.

2. Courts ⬤⟜282(3)—Suit to enjoin taxation of complainant's property in alleged violation of the state law, and invoking the due process and equal protection provisions of the Constitution, held within jurisdiction of federal court, irrespective of citizenship of parties.

A suit by a telephone company to enjoin taxation of property by the taxing officers of a county, in alleged violation of the state law, with the result of depriving complainant of its property without due process of law and deny-

ing it the equal protection of the laws, involves federal questions, which give a federal court jurisdiction, irrespective of citizenship of the parties, and such jurisdiction extends to a determination of all questions involved, whether of federal or state law.

**3. Courts ⊕⇒282(1)—Suitor may invoke jurisdiction of a federal court to protect his constitutional rights from violation by state officers.**

Where a suit is based on alleged violation of complainant's rights under the Constitution of the United States by officers acting under authority of the state, he is not required to exhaust all remedies under the state law before invoking the jurisdiction of a federal court.

**4. Taxation ⊕⇒608(9)—Court of equity held to have jurisdiction to enjoin collection of a tax for want of adequate remedy at law.**

Where the only legal remedy given a taxpayer by the laws of the state in case he pays an illegal tax would require separate actions against numerous subdivisions of the county imposing the tax among which it must be distributed, and on recovery he could not recover interest, such remedy is not adequate, and a court of equity has jurisdiction to enjoin collection.

**5. Courts ⊕⇒28—Court having jurisdiction to hear and determine a case must proceed to decree.**

Decision of a court that it has jurisdiction to hear and determine a case removes any question of discretion, and leaves a bounden duty to proceed to decree.

Appeal from the District Court of the United States for the Southern Division of the Southern District of California; Edward J. Henning, Judge.

Suit in equity by the Southern California Telephone Company and another against Ed W. Hopkins, Assessor of the County of Los Angeles, and others. Decree for defendants, and complainants appeal. Reversed and remanded.

Oscar Lawler, of Los Angeles, Cal., and Alfred Sutro, of San Francisco, Cal., for appellants.

Edward T. Bishop, County Counsel, and J. A. Tucker, Deputy County Counsel, both of Los Angeles, Cal. (Albert W. Leeds, of Los Angeles, Cal., of counsel), for appellees.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

HUNT, Circuit Judge. This is an appeal from a decree dismissing a complaint, the object of which was to secure an injunction restraining the seizure and sale of more than 300,000 telephone talking sets in satisfaction of a local tax.

Plaintiffs, California corporations, allege that since 1911 they have paid annually to the state of California in lieu of other taxes on their operative property—that is, all property used by plaintiffs in the telephone business—a fixed percentage of the gross receipts from their business. Further facts alleged are: In 1925 plaintiffs had upwards of 300,000 telephone instruments in use in Los Angeles county. A telephone instrument consists of a receiver, a transmitter, an induction coil, a stand (in case of a desk telephone) or a body (in case of a wall telephone), and the necessary wiring. Plaintiffs do not own the talking sets, but lease them from the American Telephone & Telegraph Company, a New York corporation. In April, 1925, the assessor of Los Angeles county assessed against the American Company personal property taxes of over $52,-000 on the talking sets; that is, upon receiver, transmitter, and induction coil. The American Company failed to pay the tax, whereupon the assessor threatened to seize and sell the talking sets.

It is alleged that under the Constitution and laws of California the gross receipts tax required precludes the imposition of any other tax upon the property used in the business of plaintiffs; that the tax involved is without warrant in law; that it would result in double taxation, which is expressly forbidden by the laws of California; that no other property in California is taxed twice, and that the threatened seizure and sale would disrupt and paralyze the telephone business within Los Angeles county, thereby denying plaintiffs the equal protection of the law and taking their property without due process of law, in violation of the Fourteenth Amendment; that plaintiffs have reported their instruments, including the talking sets, to the California state board of equalization as operative property, and have paid, or assert a willingness and ability to pay, gross receipts taxes to the state.

The defendants answered, and moved to dismiss, upon the grounds of lack of jurisdiction, that plaintiffs had an adequate remedy at law by paying the tax and suing to recover, and that the tax was valid. After hearing a limited amount of evidence, the case was submitted on motion to dismiss, and, in the event of denial of that motion, then without further hearing, on application of plaintiffs for permanent injunction.

The argument before us was upon these questions: (1) Does the complaint raise a federal question under the Fourteenth Amendment? (2) Are plaintiffs without an adequate remedy at law? (3) Is the tax invalid under the laws of California? (4)

Is the tax invalid under the Fourteenth Amendment?

[1] The case, we think, turns upon the construction of section 14, art. 13, of the state Constitution and certain statutes hereinafter cited. Section 14 of article 13, omitting enumeration of other public utilities than telephone companies, provides in part as follows:

"Sec. 14. Taxes levied, assessed and collected as hereinafter provided upon * * * telephone companies * * * and taxes upon all franchises of every kind and nature, shall be entirely and exclusively for state purposes, and shall be levied, assessed and collected in the manner hereinafter provided. * * *

"(a) * * * All telegraph and telephone companies * * * shall annually pay to the state a tax upon their franchises, roadways, roadbeds, rails, rolling stock, poles, wires, pipes, canals, conduits, rights of way, and other property, or any part thereof used exclusively in the operation of their business in this state, computed as follows: Said tax shall be equal to the percentages hereinafter fixed upon the gross receipts from operation of such companies, and each thereof within this state. * * *

"Such taxes shall be in lieu of all other taxes and licenses, state, county and municipal, upon the property above enumerated of such companies except as otherwise in this section provided. * * *

"(f) All the provisions of this section shall be self-executing, and the Legislature shall pass all laws necessary to carry this section into effect."

Section 3665b of the Political Code defines operative property, on which, under the above-quoted constitutional provisions, the gross receipts tax is "in lieu of all other taxes and licenses, state, county and municipal." Operative property of telephone companies includes (subdivision [d]):

"The franchises, rights of way, poles, wires, pipes, conduits, cables, switchboards, telegraph and telephone instruments, batteries, generators, and other electrical appliances, and exchange and other buildings used in the telegraph and telephone business and so much of the land on which said buildings are situate as may be required for the convenient use and occupation of said buildings."

Subdivision (e) of the same section provides:

" * * * The operative property of the companies enumerated in this section, shall also include any other property not above enumerated that may be reasonably necessary for use by said companies exclusively in the operation and conduct of the particular kinds of business enumerated in section three thousand six hundred sixty-four a of this Code."

We are at once directed to a clear understanding of the system of taxation of telephone companies in California by the decision of the Supreme Court in San Francisco v. Pacific Telephone & Telegraph Co., 166 Cal. 244, 135 P. 971, where it is shown that the larger purpose of changes wrought by the constitutional amendment, heretofore quoted, was division of the subjects of state and local taxation by imposing upon corporations engaged in certain callings the obligation to pay certain taxes to be applied exclusively to state purposes, and by making provision that persons engaged in, and the property employed in, a public service corporation are, to a greater or less degree, to be free from the burden of local taxation. With respect to telephone companies, provision is made for taxes measured by given percentages of gross receipts, the taxes so imposed to be in lieu of all other taxes and licenses, state, county, and municipal, upon the property of the corporation in question. The court further pointed out that the new method under which the taxes are collected exclusively for the state was substituted for former ways, and that the percentages imposed by the amendment "supersede, not only other taxes upon the property, but also license fees like those exacted by the ordinances of the city and county." These views were followed in Hartford Fire Insurance Co. v. Jordan, 168 Cal. 270, 142 P. 839, where it was again held that the effect of the amendment was to supersede the prior state license tax act, so far as it applied to the insurance company. Pullman Co. v. Richardson, 261 U. S. 330, 43 S. Ct. 366, 67 L. Ed. 682.

We do not understand that defendants would controvert the proposition to this extent: That the effect of the amendment was to supersede prior taxes and that the talking sets are operative property, and that if they were owned by plaintiffs they could not be assessed. They do insist, however, that the language, "their * * * poles * * * wires and other property, or any part thereof used exclusively in the operation of their business in this state," should be construed with relation to the general scheme of taxation in California, which they urge is based upon the principle that the owners of property shall pay taxes. They proceed by arguing that the in lieu clause of subdivision

(a) of the amendment as pertinent to the property "of such companies" is a relief to the public utilities from payment of further taxes on *their* property (italics ours), but not upon property leased and used by such companies. We are constrained to regard the contention as against the real meaning of the amendment and the relevant statutes.

In ascertaining whether actual use of the sets in the business, rather than underlying ownership of them, is the proper criterion by which taxation shall be imposed, we refer to certain statutory requirements. The California Political Code requires that each public utility shall file an annual report with the state board of equalization, in such detail as the board shall prescribe, showing, among other things, its operative property. The board must provide for the assessment of the gross receipts tax—in case of telephone companies 5½ per cent. of the gross receipts for the preceding calendar year. Sections 3665a and 3665c.

Upon the argument we were told that for many years these plaintiffs have made the necessary reports, in which were included the talking sets (leased from another corporation) as an integral part of the instruments, and the board of equalization has assessed gross receipts taxes ($——— for the year 1925–1926). Thus in prior practical custom the talking sets have been regarded as operative property, subject to taxation to plaintiff. In San Bernardino County v. State Board of Equalization, 172 Cal. 76, 155 P. 458, the Supreme Court said: "The prime requisite for property properly classified as 'operative' is that it shall be used in the conduct of the business of one of the corporations enumerated in subdivision (a) of section 14 of article 13 of the Constitution," and that the exertion of the local taxing power in all of the cases included "not the quality or the nature of the property so much as its use." This decision harmonizes with the view that the scheme of taxation laid out in the amendment rests upon the intention to fix the contribution of a telephone company to the revenues of the state by the earnings of its plant, used as an entirety. While courts will not concern themselves with the economic policy pervading a state statute, they may properly consider that in taxing gross receipts upon all operative property in use there is really a payment of a substitution tax upon the whole value of the property in use. Trimble v. Seattle, 231 U. S. 683, 34 S. Ct. 218, 58 L. Ed. 435; San Pedro R. Co. v. Los Angeles, 180 Cal. 18, 179 P.

393; Pullman Co. v. Richardson, 185 Cal. 484, 197 P. 346.

Questions of assessment and taxation of operative property leased and operative property held in fee have been before the courts in several instances. Difference in the phraseology of the statutes of the several states may lessen the value of the decisions as authorities in the present case, but the reasoning of the courts is quite apposite. Merrill Railway v. City of Merrill, 119 Wis. 249, 96 N. W. 686, was a case where the city assessed land leased to the street railway company. The state statute required gross receipts taxes on street railways, and provided that all property "owned and actually and necessarily used by such * * * corporation in the operation of its business shall be exempt from taxation and other license fees." In a suit the railway company joined the lessors of certain property used by the street railway to have the tax declared void. The court held that the tax was improperly assessed, and rested decision upon the ground that the whole purpose of the scheme of taxation was to measure the contribution of street railways and public revenues by the earning capacity of their plants as entireties, and regarded leased property as falling within the purpose of the exemption as readily as that which was owned absolutely, while the property was actually used for the purposes of the enterprise. The court said: "What difference would it make that this power plant had been purchased? Such fact would neither enhance nor diminish the gross earnings of the entire plant, nor the contribution thereto of this particular property. Why should the legislators care whether the dynamos in the power house or the motors on the cars were owned or leased? In either case they contribute equally to produce the revenue on which the license fee is graded." City of Superior v. Allouez Bay Dock Co., 166 Wis. 76, 164 N. W. 362.

In People ex rel. Collector v. Wiggins Ferry Co., 257 Ill. 452, 100 N. E. 956, a railroad company reported a portion of its right of way which it held under lease from the defendant. The land was assessed to defendant and in due course the assessor obtained judgment for local taxes upon the land. The Supreme Court considered the statute of the state which required railroad companies to file with the state board of equalization sworn schedules of their tracks, and held that the mere fact that the appellant owned the fee and that the railroad was in possession under lease or otherwise did not authorize the assessor to assess the right

of way. "Real estate used by a railway company for a right of way," said the court, "is 'railroad track' for the purposes of assessment, and is assessable only by the state board of equalization, even though the railroad company is a tenant by sufferance or has a lease, and the title to the land is owned by another corporation or individual." In People v. Illinois Northern R. Co., 248 Ill. 532, 94 N. E. 37, the court, after setting forth that the jurisdiction of the Illinois state board of equalization was exclusive over the class of property designated as railroad track for assessment purposes, whether held by a railroad company in fee, or for years, or otherwise, said: "In other words, that the use to which the property is devoted, and not where the fee title rests, determines which of the assessing bodies—that is, the state board of equalization or local assessors—shall assess property in use by a railroad company for right of way purposes." People v. Terre Haute, 256 Ill. 591, 100 N. E. 173.

[2] Upon the point of jurisdiction we are aided by the highest authority. In Greene, Auditor, v. Louisville, etc., Co., 244 U. S. 499, 37 S. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88, the railroad companies brought suit against the members of the Kentucky board of valuation and assessment and the legal officers of the state to enjoin them from certification and enforcement of certain state franchise taxes assessed under the Kentucky Statutes. It was alleged that the state officials had discriminated against plaintiffs by assessing their intangible property at a rate higher than that employed by other taxing authorities of the state in assessing similar property. Jurisdiction was invoked under the due process and equal protection clauses of the Fourteenth Amendment. Plaintiffs also asserted that the threatened action of the defendants was in violation of the uniform taxation provisions of the Constitution of the state of Kentucky. Jurisdiction was held in the federal court, the Supreme Court saying that the contention that the action of the board of valuation and assessment referred to in the complaint, and the threatened action of the local government authorities in respect to carrying the assessments into effect, constituted action by the state, and, if carried out, would violate the equal protection provision of the Fourteenth Amendment, and that there was a real and substantial controversy presented under the Constitution of the United States, which conferred jurisdiction upon the federal court, irrespective of the citizenship of the parties. The court further held that, as juris-

diction existed, it extended to the determination of all questions involved in the case, including the question of state law, "irrespective of the disposition that may be made of the federal question, or whether it be found necessary to decide it at all."

Raymond, Treasurer, v. Chicago Traction Co., 207 U. S. 20, 28 S. Ct. 7, 52 L. Ed. 78, 12 Ann. Cas. 757, was cited. In that case suit was brought to enjoin the treasurer of Cook county, Ill., from taking further proceedings toward the collection of certain taxes assessed against the traction company upon an assessment alleged to be in violation of the Fourteenth Amendment, which, if enforced, would result in the taking of property without due process of law and in denying it the equal protection of the law. There was no allegation of diversity of citizenship. The Supreme Court held that the action of the state board of equalization and assessment, in assessing property of the traction company, was the action of the state, and that, as it appeared that, if it were carried out, the provisions of the Fourteenth Amendment would be violated, by taking property without due process of law and by failing to give equal protection of the law, a federal question was presented "beyond all controversy."

[3] Respondents cite Barney v. New York, etc., 193 U. S. 430, 24 S. Ct. 502, 48 L. Ed. 737, as supporting the argument that all possible remedies under the state law must be exhausted before plaintiffs are entitled to relief in the federal courts. But the force of the Barney Case has been greatly weakened by the discussion in Home Telephone Co. v. County of Los Angeles, 227 U. S. 278, 33 S. Ct. 312, 57 L. Ed. 510, where there was no diversity of citizenship alleged. The telephone company sued to enjoin the enforcement of a rate-fixing ordinance on the ground that the ordinance was contrary to the Fourteenth Amendment. Defendant answered that the ordinance, if contrary to the Fourteenth Amendment, was contrary to similar provisions of the state Constitution, and that the telephone company must proceed under the state law. The court, speaking through Chief Justice White, said: "That is to say, the theory of the amendment is that, where an officer or other representative of a state, in the exercise of the authority with which he is clothed, misuses the power possessed to do a wrong forbidden by the amendment, inquiry concerning whether the state has authorized the wrong is irrelevant and the federal judicial power is competent to afford redress for the wrong by

dealing with the officer and the result of his exertion of power." The Barney Case, supra, was expressly held to have been so distinguished or qualified by the Raymond Case, supra, as not to be even persuasive in the argument that the federal court will not interfere merely because of a contention that it is the duty of the plaintiff to exhaust all possible remedies under the state law before he is entitled to relief in the federal court. Other cases might be cited, but those selected are authority for holding that a federal question is presented.

[4] Plaintiffs aver that they have no adequate remedy at law, for the reason that upon payment of the tax they could recover, if at all, only by a multiplicity of suits against the defendant county and 16 municipalities from which the tax is collected, that no interest on the tax could be recovered, and that it was doubtful whether plaintiffs, not being owners of the talking sets, could maintain an action under the statutes of California.

Parts of the tax in suit, if collected by Los Angeles county, would be for the benefit of and turned over to 16 separate municipalities. Stats. Cal. 1895, p. 219, as amended; Deering's Gen. Laws 1923, vol. 2, p. 3531. Under that act a tax rate is fixed by each municipality, and municipal taxes are to be collected at the same time and in the same manner as county taxes, and when collected are to be paid to the treasurer of the municipal corporation to which the tax belongs, under the general requirements provided by law for the settlement of other taxes. By a general law of the state a tax collector must pay all the taxes in his hands to the county treasurer on the first Monday of each month, and make such payment at least once a month and oftener, in his discretion. Pol. Code Cal. §§ 3753, 4126. Under section 1, Act March 27, 1895, supra, as amended, a municipality may at any time withdraw from the arrangement whereby the county collects its taxes.

Section 3804 of the Political Code provides that any taxes erroneously or illegally collected may, by order of the board of supervisors, be refunded by the county treasurer, and whenever payment shall have been made to the state treasurer by the county treasurer, as provided by sections 3865 and 3866 of the Political Code, and it shall afterwards appear to the satisfaction of the board of supervisors that a portion of the moneys so paid should be refunded as provided in the section, the board may refund such portion of the taxes, penalties, and costs so paid to the state treasurer to the person paying the same out of the general fund, and shall thereafter report the same to the proper authorities, and in the next settlement between the county treasurer and the comptroller, the comptroller if satisfied of the legality of such refunding by the board, shall give the treasurer credit for the state's portion of the amounts so refunded as prescribed in section 3871 of the Code.

Under section 3819, Political Code, at any time after the assessment book has been received by the tax collector and the taxes have become payable, the owner of any property assessed therein, who may claim that the assessment is void, may pay the tax to the tax collector under protest in writing, specifying whether the whole assessment is claimed to be void, or, if a part only, what portion; and such owner may within six months bring action against the county in the superior court to recover the tax so paid under protest, and if it be adjudged that the assessment or any part thereof referred to in the protest was void on a ground specified in the protest, judgment shall be entered against the county therefor. On the payment of any such judgment, such part of the tax recovered thereby as may have been paid by the county treasurer into the state treasury shall be regarded as an amount due the county for the state, and shall be deducted in the next settlement had by the county and the state.

It is doubtful whether these plaintiffs, not being "owners" of the property assessed, could obtain relief under section 3819. Warren v. City & County of San Francisco, 150 Cal. 167, 88 P. 712. It may be that recovery could be had under section 3804, as construed in Hayes v. County of Los Angeles, 99 Cal. 74, 33 P. 766, where it was held that, where the public interest or private right requires that a thing shall be done, the word "may" is generally construed to mean "shall," and that the board of supervisors are empowered to refund, and in Stewart Law & Collection Co. v. Alameda, 142 Cal. 660, 76 P. 481, where, in an action based on section 3804, taxes were illegally assessed, and claim was presented to the board for refund and was refused, the court held that the statute furnished a summary remedy authorizing a refund. It was also held that section 3804 was intended to give relief without the necessity of resorting to the courts, while section 3819 was meant to afford a remedy in certain cases through the courts, but that the remedies furnished by the sections were independent, and not to be regarded as exclusive.

Plaintiffs argue, however, that section 3804 is not applicable where a lessee claims that the assessment is void in whole or in part. That question does not seem to have been directly decided, and in the absence of a positive ruling by the Supreme Court of the state, of course, no construction by us could settle the point. Again, if plaintiffs should pay the taxes in suit, there would seem to be no certain way of obtaining complete refund, except by suits against the county and the various municipalities. This would require plaintiffs to bring many suits, and in the event of recovery there would be no provision by which plaintiffs could recover the sums allowed the counties for the costs of collection. It is well established that where adequate remedy at law is not clear, and equity can furnish relief, a plaintiff ought not to be compelled to take the chance of obtaining relief at law. Davis v. Wakelee, 156 U. S. 680, 15 S. Ct. 555, 39 L. Ed. 578; Atlantic Coast Line v. Daughton, 262 U. S. 413, 43 S. Ct. 620, 67 L. Ed. 1051.

The collection of interest is entitled to special consideration. By the laws of California one who recovers a wrongfully collected tax, paid under protest under section 3819, cannot recover interest until after judgment (Engebretson v. San Diego, etc., 185 Cal. 475, 197 P. 651; Spencer v. Los Angeles County, 180 Cal. 115, 179 P. 163. In Birch v. Board of Supervisors, 191 Cal. 235, 215 P. 903, the Supreme Court, reviewing an order of the superior court where proceedings presented the validity of an order of the supervisors increasing an assessment upon the property of plaintiffs, held that the petitioner, not being entitled to recover interest upon the increased tax, had no adequate remedy by suit to recover the tax. In Proctor & Gamble Distributing Co. v. Sherman (D. C.) 2 F.(2d) 165, plaintiff brought suit to enjoin the Attorney General of the state and members of a state commission from collecting certain corporation taxes on the ground that the defendants in calculating the taxes ignored the distinct entities of the plaintiff and its subsidiaries. The officials set up that the plaintiff had an adequate remedy at law by paying the tax and bringing suit to recover. It was held that an express refusal to allow interest was a denial of an adequate remedy. Judge Hand said: "While I have been referred to no decision on the point, it seems to me plain that it is not an adequate remedy, after taking away a man's money as a condition of allowing him to contest his tax, merely to hand it back, when, no matter how long after, he establishes that he ought never to have been required to pay at all."

The conclusion we draw from the language of the Constitution and the statutes is that the gross receipts tax is a property tax on the talking sets, and that the levy threatened by the local authorities would result in the imposition of a double tax on the same property, effected not merely by a mistake, but with intent to adopt as a practice an unlawful discrimination, and that remedy by injunction will lie. Chicago G. W. R. v. Kendall, 266 U. S. 94, 45 S. Ct. 55, 69 L. Ed. 183.

[5] As a sequel to what we have said, we hold that the District Court was correct in the opinion that it had jurisdiction and in the intimation that the merits were with the plaintiffs, but we think it erred in declining to exercise the jurisdiction. Decision that there was power to hear and determine removed any question of discretion, and left a bounden duty to proceed to a decree. Cohen v. Virginia, 6 Wheat. 264, 5 L. Ed. 257; Willcox et al. v. Con. Gas Co., 212 U. S. 19, 29 S. Ct. 192, 53 L. Ed. 382, 15 Ann. Cas. 1034, 48 L. R. A. (N. S.) 1134; Kline v. Burke Con. Co., 260 U. S. 226, 43 S. Ct. 79, 67 L. Ed. 226, 24 A. L. R. 1077.

The decree will be reversed, and the cause remanded, with directions to proceed with the case and to grant injunction prayed for by plaintiffs.

Reversed and remanded.