**HESS v. MULLANEY, Commissioner of Taxation Territory of Alaska, et al. (ALASKA JUNEAU GOLD MINING CO., Intervenor).**
No. 6352.

United States District Court, Alaska
Fourth Div. Fairbanks.
June 19, 1950.

140

H. L. Faulkner, of Juneau, Alaska, Medley & Haugland, Seattle, Wash., Collins & Clasby, of Fairbanks, Alaska, attorneys for plaintiff.

Faulkner, Banfield, & Boochever, of Juneau, Alaska, attorneys for intervenor.

J. Gerald Williams, Attorney General of Alaska, attorney for Defendants M. P. Mullaney, Tax Commissioner and William Liese, Tax Assessor.

Mike Stepovich, Jr., of Fairbanks, Alaska, Attorney for defendant, City of Fairbanks.

Maurice T. Johnson, of Fairbanks, Alaska, attorney for defendants, Fairbanks School District and its directors. L. F. Joy, Frank Conway, A. F. Coble and Frank P. DeWree.

PRATT, District Judge.

The Organic Act of Alaska approved August 24, 1912, as amended by act of June 3, 1948, Tit. 48, U.S.C.A. § 78, 48-1-1, A.C.L.A., 62 Stat. 302, will hereinafter be referred to as the Organic Act; Chapter 10 of the Session Laws of Alaska 1949 will hereinafter be referred to simply as Chapter 10; Alaska Compiled Laws Annotated 1949 will be referred to as ACLA; the portion of Alaska outside of cities (also called municipal corporations), independent school districts, incorporated school districts and public utility districts will be referred to hereinafter as the "Tax Commissioner's" district; the word city shall include the municipal corporations of Juneau, Douglas and Fairbanks, each of which is classified under the laws of Alaska as a first class city.

*Section 1 Mining Claims*

The Act of Congress of June 3, 1948 amending section 9 of the Organic Act of Alaska provides, "All taxes shall be uniform upon the same class of subjects and shall be levied and collected under general laws, and the assessments shall be according to the true and full value thereof, except that unpatented mining claims and nonproducing patented mining claims, which are also unimproved, may be valued at the price paid the United States therefor, or at a flat rate fixed by the legislature, but if the surface ground is used for other than mining purposes, and has a separate and independent value for such other purposes, or if there are improvements or machinery or other property thereon of such a character as to be deemed a part of the realty, then the same shall be taxed according to the true and full value thereof. No tax shall be levied for

Territorial purposes in excess of 2 per centum upon the assessed valuation of the property therein in any one year; nor shall any incorporated town or municipality levy any tax, for any purpose, in excess of 3 per centum of the assessed valuation of property within the town in any one year". 62 Stat. 302.

The legislature of Alaska by Chapter 10, which became effective on the 21st day of February 1949, provided in section 3 thereof for the calendar year of 1949 and each calendar year thereafter, "There is hereby levied, and there shall be assessed, collected and paid, a tax upon all real property and improvements and personal property in the Territory at the rate of 1 per centum of the true and full value thereof. For the purposes of this section the assessed value of unimproved, unpatented mining claims which are not producing, and nonproducing patented mining claims upon which the improvements originally required for patent have become useless through deterioration, removal or otherwise, is hereby fixed at $500.00 per each 20 acres or fraction of each such claim * * *".

The plaintiff has mining claims both patented and unpatented which under the terms of said section 3 would be subject to tax and which have been taxed by the taxing units wherein they lie.

It is maintained by plaintiff and intervenor that the Territorial Legislature had no authority from Congress to provide in section 3 of Chapter 10 that the value of mining claims which were nonproducing and were without improvements should be fixed at $500 for each 20 acres or fraction thereof in such claim in that such a valuation is not the price "paid the United States therefor" nor a "flat rate".

■ The word "flat" is ordinarily an adjective meaning "absolute; unvarying; exact; even;" Webster's International Dictionary, 2nd Ed.

In Salt Lake City v. Christensen Co., 34 Utah 38, 95 P. 523, 17 L.R.A., N.S., 898, it was held that the levy of a specified tax in an equal sum upon all merchants was a flat rate.

In Holst v. Roe, 39 Ohio St. 340, 48 Am. Rep. 459, it was held that a tax per capita upon animals owned by a taxpayer would be invalid as not being according to value.

In Northwestern Improvement Co. v. State, 57 N.D. 1, 220 N.W. 436, a statute providing for a tax of 3 cents for each acre of mineral resources was held to be a flat tax per acre and invalid as not according to value.

In Re Opinion of the Justices, 84 N.H. 557, 149 A. 321, 334, it was held that a proposed bill to make a valuation per acre, the test of taxability was invalid.

■ "A statute is invalid which sets up an arbitrary and inflexible standard for the valuation of property * * * " 61 C.J. page 152, section 89.

In Reelfoot Lake Levy District v. Dawson, 97 Tenn. 151, 36 S.W. 1041, 1042, 34 L.R.A. 725, an act of the legislature providing that the board of levee directors had the duty "to assess and levy a contribution tax not exceeding ten cents per acre * * * " was invalid as contravening the Constitution which provided, "All property shall be taxed according to its value * * * ".

Under section 3 of Chapter 10, a mining claim of one acre would be valued at $500 which is at the rate of $500 per acre; a claim of 10 acres would be valued at $500 which is at the rate of $50 per acre; a claim of 20 acres would be valued at $500 which is at the rate of $25 per acre; a claim of 20.1 acres, which is the maximum area of a quartz claim, would be valued at $1000 which would be at the rate of $49.75 per acre; a claim of 40 acres would be valued at $1000 which would be at the rate of $25 per acre; a claim of 160 acres would be valued at $4000 which would be at the rate of $25 per acre.

Thus the tax on mining claims is not a flat rate and the assessment is not according to the true and full value thereof required by the Organic Act.

■ The results of what is said hereinabove are that the territorial tax of 1% upon mining claims of plaintiff and also of the intervenor is invalid.

*Section 2 Lack of Territorial Equalization Board*

■ While Chapter 10 provides for equalization of assessments in each judicial division, there is no provision for a Board of Equalization to equalize the taxes of the various taxing districts in various judicial divisions. Counsel for plaintiff and intervenor maintain that the lack of such a board in itself makes the territorial tax of Chapter 10 lacking in uniformity.

Boards of equalization are creatures of statute. Michigan Central Railroad v. Powers, 201 U.S. 245, 301-302, 26 S.Ct. 459, 50 L.Ed. 744; State Railroad Tax Case, 16 Wall. 603, 83 U.S. 603, 609, 21 L.Ed. 373; 61 C.J., p. 749, secs. 922 and 935. Consequently as the laws of Alaska do not require a Territorial Board of Equalization, the lack of such a board does not in itself show a lack of uniformity in the tax imposed by Chapter 10.

*Section 3 Uniformity of Taxation Under Chapter 10*

By Chapter 10, the Territorial Legislature provided for a territorial tax of one per cent of the assessed value of property, real or personal, in Alaska. It provided that a large part of such taxes were to be collected by municipalities, public utility districts and school districts at their expense. Property which was not within a municipal corporation or a school district or public utility district was to have its taxes assessed and collected by the Tax Commissioner under the special provisions of Chapter 10.

Property which lay within the boundaries of a city, or town or independent school district or incorporated school district or public utility district was to have its property assessed and collected by the municipality or district in which it lay and according to the property tax laws of that municipality or district. Section 4, Ch. 10. Independent school districts are composed of a city plus some surrounding area while incorporated school districts do not have any city within their boundaries.

Property which lay outside the boundaries of a city but within the boundaries of an independent school district was to be assessed and tax collected by the officers of the independent school district according to the tax laws of the district which was allowed the same penalties, rate of interest and exemptions as its city and the power and duties of a city with reference to the levy, assessment and collection of taxes and all the laws relative to the levy and collection of taxes in municipal corporations 37-3-54.

■ The word uniform or uniformity as used in the Organic Act of Alaska, § 9, as amended, is the same as used in the United States Constitution where Congress was given the power to lay excise taxes etc., "but all Duties, Imposts and Excises shall be uniform throughout the United States". Art. 1, § 8, cl. 1.

In Knowlton v. Moore, 178 U.S. 41, 20 S. Ct. 747, 44 L.Ed. 969, the Supreme Court interpreted the meaning of the word uniform appearing in the Constitution as above mentioned. The construction approved by the Court in that case was 178 U.S. at page 84, 20 S.Ct. at page 764, "that the words 'uniform throughout the United States' do not relate to the inherent character of the tax as respects its operation on individuals, but simply requires that whatever plan or method Congress adopts for laying the tax in question, the same plan and the same method must be made operative throughout the United States; that is to say, that wherever a subject is taxed anywhere, the same must be taxed everywhere throughout the United States, and at the same rate".

And 178 U.S. at page 96, 20 S.Ct. at page 769, "The proceedings of the Continental Congress also make it clear that the words 'uniform throughout the United States,' which were afterwards inserted in the Constitution of the United States, had, prior to its adoption, been frequently used, and always with reference purely to a geographical uniformity and as synonymous with the expression, 'to operate generally throughout the United States'."

178 U.S. at page 104, 20 S.Ct. at page 772, "The sense in which the word 'uniform' was used is shown by the fact that the committee, whilst adopting in a large measure

the proposition of Mr. McHenry and General Pinckney, 'that all duties, imposts, excises, prohibitions, or restraints * * * shall be uniform and equal throughout the United States,' struck out the words 'and equal.' Undoubtedly this was done to prevent the implication that taxes should have an equal effect in each state. As we have seen, the pith of the controversy during the confederation was that even although the same duty or the same impost or the same excise was laid all over the United States, it might operate unequally by reason of the unequal distribution or existence of the article taxed among the respective States".

In Fox v. Standard Oil Co., 294 U.S. 87, at page 102, 55 S.Ct. 333, 339, 79 L.Ed. 780, the Supreme Court stated, "Third. The statute does not violate the Constitution of West Virginia which requires that taxation shall be equal and uniform throughout the state. Article 10, § 1.

The Constitution of Indiana has a like provision which was considered by this court when sustaining the chain store tax in State Board of Tax Commissioners v. Jackson, supra, at page 542 of 283 U.S., 51 S.Ct. 540, 75 L.Ed. 1248, 73 A.L.R. 1464, 75 A.L.R. 1536. The view was expressed that the standard of uniformity under the Constitution of the state was substantially the same as the standard of equality under the Fourteenth Amendment of the Constitution of the nation".

To the same effect is Alaska Steamship Co. v. Mullaney, 9 Cir., 180 F.2d 805, 817.

In Fernandez v. Wiener, 326 U.S. 340, 359, 66 S.Ct. 178, 188, 90 L.Ed. 116, the court said, "It has long been settled that within the meaning of the uniformity requirement a 'tax is uniform when it operates with the same force and effect in every place where the subject of it is found.' "

Cities have the statutory power to levy, assess and collect taxes up to and including 3% of the value of the non-exempt property within their boundaries, § 9, Organic Act as amended, Tit. 48, U.S.C.A. § 78. The grant to the city by the legislature of the right to assess, collect and keep the territorial one per cent tax gives these cities the right to assess, levy and collect a total of 4% of the value of property within their boundaries.

The amendment of June 3, 1948, Tit. 48, U.S.C.A. § 78, raised the taxing ability of "any incorporated town or municipality" from 2% to 3% but did not raise the power of school districts to tax in excess of 2% of the assessed valuation.

As long as all city expenses are not over 3% of the assessed valuation of its property, there will be no difference between the sum raised by levy of 3% for the city expenses and one wherein the levy is for 2% for city expenses plus 1% for the territorial tax. But if the city's expenses are to be over 3% of the assessed valuation of the city's property, the city will be compelled to collect the territorial tax of 1% in order to pay the expenses which are over the 3%.

An independent school district is limited to a tax levy of 2% of the assessed valuation of its property. Consequently in order for it to pay expenses above 2%, it will have to utilize the territorial tax.

Cities were, by § 4, Ch. 10, allowed to retain for their own uses the entire one per cent of the territorial tax collected by them. The independent school districts and incorporated school districts were given the right to collect and to keep such portion of the territorial taxes as was necessary for school expenses, but they were required to pay over to the Territorial Treasurer any amount of such taxes which existed after satisfying such school expenses.

As Chapter 10 levied the territorial tax and gave the entire tax to the city collecting it and as the power to tax and the power to dispose of it are inseparable powers, it appears that the levy of a tax in Chapter 10 and the giving of the same to the cities collecting were separate acts, each of which was entirely within the power of the legislature. 61 C.J. p. 1520.

■ The duty to collect taxes may be laid on a municipality by the state. Some states allocate in advance part of the tax to the municipality. 61 C.J. p. 1523.

144

Counsel for defendants assert that the legislature has in effect in Chapter 10 made two classes for taxation, to wit: the first class being property within incorporated municipalities and the second class being property outside incorporated municipalities. It is thus an alleged classification according to the location of the property.

■ Classifications according to the location of the property are invalid. Philadelphia, B. & W. R. Co. v. Mayor and Council of Wilmington, Del.Ch., 57 A.2d 759. 1 Cooley on Taxation, sec. 335. Essex County Park Comm. v. West Orange, 77 N.J.L. 575, 73 A. 511. In re State Taxation, 97 Me. 595, 55 A. 827. Monaghan v. Lewis, 5 Pennewill 218, 59 A. 948, 10 Ann. Cas. 1048. Village of Hardwick v. Town of Wolcott, 98 Vt. 343, 129 A. 159.

In Maryland, where the constitution does not forbid local laws, it was held in Grossman v. Baughan, 148 Md. 330, 129 A. 370 that a law limited to the City of Baltimore, was valid.

As the Organic Act of Alaska, 48 U.S.C. A. § 78, provides "All taxes shall be uniform upon the same class of subjects * * * ", it is believed the subject of taxation is the real and personal property of a taxpayer and that a classification of property as within or without a city would not be a classification of the subject of taxation at all.

Schoyer v. Comet Oil & R. Co., 284 Pa. 189, 130 A. 413, 416, the statute made gas taxes paid to a corporation vendor a prior lien on the vendor's property. Held: that the statute was invalid as was the classification of vendors as individual or corporations.

It was stated by the court: "The test of classification is whether it produces diversity in results or lack of uniformity in its operation, either on the given subject of tax or the persons affected as payers. There must be a real distinction between the objects with which the law deals for it to be valid".

· The above mentioned classification (within or without a municipal corporation) produces diversity and lack of uniformity within each of said classes as hereinafter shown.

Also if such classification was made, it would be invalid by reason of lack of uniformity within each such classification.

The following lack of uniformity is found:

*Property within Cities*

The Cities of Juneau and Douglas by ordinance allow a 2% discount if the whole tax is paid before delinquent. This was by reason of an ordinance of the Cities of Juneau and Douglas passed long before the passage of Chapter 10. The Territorial Legislature is presumed to have known of the ordinance and to have approved of the same in requiring the territorial tax to be assessed and collected according to the laws of the city wherein it lay. The tax in the City of Juneau and Douglas therefore is 98/100 of 1% whereas in the City of Fairbanks no rebate is allowed and 100/100 of 1% of the territorial tax must be paid.

In the City of Juneau taxes are delinquent if the first half is not paid by 4 o'clock p.m. on November 15th of the year of levy. If not paid at that time, it becomes delinquent and the whole tax becomes due and a penalty of 15% plus interest at 12% per year is added. If the first half is paid before delinquent, the second half is not due until May 15th of the next year.

In the City of Fairbanks taxes are delinquent if not paid prior to October 16th of the year of levy. A penalty of 10% plus interest at 10% per year is added for delinquency. If the first half of the tax is paid on or before October 15th, the second half is due March 31st of the ensuing year.

In the City of Douglas taxes are delinquent if not paid before November 16th of the year of taxation. A penalty of 10% plus 8% interest is added for delinquency. If the first half is paid before delinquent, the second half is due March 15th of the ensuing year.

The lien for the payment of taxes is impressed upon the property when the assessment is complete which in Juneau is on or before the 2nd Tuesday in October of the year of levy. (Juneau ordinance attached to affidavit of C. L. Popejoy, filed herein January 18, 1950, sections 6, 7 and 8). In

Douglas, the lien attaches in the month of August of year of levy (section 7, Ordinance of Douglas, attached to affidavit of A. J. Balog, filed herein January 18, 1950).

In the City of Fairbanks, the lien attaches on the first day of October of the year of levy.

Unless otherwise provided by statute, the tax becomes a lien upon the property taxed as soon as the levy and assessment are made and the rate fixed. 61 C.J. § 1172, p. 922.

The statutes of Alaska and the ordinances of the cities and districts provide that the tax lien shall attach to real and personal property upon the assessment being made as hereinbefore mentioned. Section 37-3-54; Sec. 16-1-35 (9), A.C.L.A. Also ordinances.

*Property Outside the Cities*

This would include all of the property within the Tax Commissioner's taxing district and public utility districts and incorporated school districts and independent school districts outside the included city.

Chapter 10 provides for the following exemptions from taxes: (1) Personal property of any person to the value of $200 (2) New commercial businesses during the time of construction but not more than 3 years (3) Homesteads from the date of final entry until one year after the patent has been granted (4) As an industrial incentive, the Tax Commissioner with the approval of the Divisional Board of Assessment may grant an exemption up to one-half of the territorial tax for a period not exceeding 10 years from the date production commenced. Sec. 6, Ch. 10.

Exemptions granted by the Tax Commissioner as an industrial incentive mentioned above are by section 6 (h) (4) of Chapter 10 made applicable to all other taxing districts.

The exemptions other than mentioned in sec. 6 (h) (4) do not apply to any taxing district other than the Tax Commissioner's district. The cities and districts to which the city tax law has been made applicable have an exemption of $200 upon the value of the furniture of the head of a family or householder but that is much narrower than the $200 exemption mentioned as to an exemption in the Tax Commissioner's district. 16-1-35(9).

In the independent school districts of Juneau, Douglas and Fairbanks outside the included city, there is a right to redeem from tax sales within 2 years of the sale. (See ordinances and resolution of cities and independent school districts) In the Tax Commissioner's district, there is no such redemption.

In the school districts outside of cities, notice by publication for four consecutive weeks must be given prior to a tax sale whereas the only notice given for the sale for delinquent taxes within the Tax Commissioner's district is the filing of a delinquent list of taxes in the District Court with the clerk, another list in the Office of the Treasurer of Alaska and a third list in the Office of the Register of the District Land Office, § 42, Ch. 10. Consequently if the territorial legislature did so classify, there were many matters within each class which were not uniform and which make the classification invalid.

The matters mentioned above as constituting lack of uniformity within and without cities constitute a lack of uniformity between taxing districts generally, the existence of which makes the taxing portion of Chapter 10 invalid. The 2% discount given by the independent school districts of Juneau and Douglas are not given anywhere else except in the cities of Juneau and Douglas.

In Fairbanks, the Fairbanks independent school district and in the Tax Commissioner's district, there is no discount on taxes.

Sec. 32, Ch. 10, effective as to the Tax Commissioner's district only, makes taxes payable upon the first day of February of the ensuing year. The lien of the tax in the Tax Commissioner's district becomes fixed upon the completion of the assessment which is to be on or before the first day of September for 1949 and thereafter on or before the first day of July, Sections 16 and 34, Ch. 10.

*Valuation*

Sec. 11, Ch. 10 which applies only to the Tax Commissioner's district states, "The true value of property shall be that value at which the property would generally be taken in payment of a just debt from a solvent debtor". Section 9 of the Organic Act requires that assessments of property be made "according to the true and full value thereof". Sec. 9, Organic Act as amended, 62 Stat. 302, Tit. 48 U.S.C.A. § 78.

*Section 4 Taxes Within the City of Fairbanks*

Sec. 3, Chapter 10 provides "For the calendar year of 1949, and each calendar year thereafter there is hereby levied, and there shall be assessed, collected and paid, a tax upon all real property and improvements and personal property in the Territory at the rate of one per centum of the true and full value thereof".

In sec. 4, Ch. 10, it states that within the limits of a city, the territorial tax shall be collected and enforced in the manner prescribed by the property tax laws of the municipality.

The territorial tax became a lien upon the property within the City of Fairbanks upon the 26th day of September 1949 when the assessment rolls were by resolution accepted. (See resolution of September 26, 1949 and ordinances of City of Fairbanks attached to the motion for a preliminary injunction).

In said resolution it was also provided that a 20 mill levy be made for the school and city expenses in addition to the one per cent territorial tax.

As the levy of the tax was made by section 3, Ch. 10 and as the City of Fairbanks assessed the property on the 26th day of September 1949 and also in the same resolution made arrangements for the collection of the territorial tax, it had done everything required by law at that time.

However, upon the 10th day of October 1949, the council of the City of Fairbanks amended its resolution of September 26, 1949 by providing that there should be "O" taxes collected for the territorial tax.

Sec. 4, Ch. 10 provides that the cities may assess and collect the territorial tax on property situated in said cities in the manner prescribed by the property tax laws of the city. The city may also levy additional taxes to be assessed and collected at the same time and manner as provided in sec. 3.

*Section 5 Intervenor's Case*

As intervenor is the owner of property within the Cities of Juneau and Douglas, the matters stated hereinbefore with reference to the legality of the tax upon the plaintiff's property in the City of Fairbanks show the illegality of Chapter 10 with reference to intervenor's said property. Likewise, the conclusions announced hereinbefore relative to the illegality of said tax as to the property of the plaintiff within the Fourth Judicial Division but outside the City of Fairbanks apply to intervenor's property in the First Judicial Division but outside the Cities of Juneau and Douglas.

Intervenor paid the following taxes upon its boats in the Juneau independent school district, to wit: tug Trojan 43 tons at $4, $172; mine tender Amy 22 tons at $4, $88; scow # 1 22 tons, $1; scow # 3 271 tons, $10; scow # 4 271 tons, $10; scow # 5 271 tons, $10.

It thus appears that intervenor was in no way injured by the provisions of Chapter 88, Session Laws of Alaska, 1949, amending section 3, Chapter 10, so as to allow boats to be valued according to their actual value or at $4 per registered ton. It chose to have part of its boats assessed at actual value and part of them at $4 per registered ton, apparently thereby securing the lowest tax rate for its property. Intervenor is now in no position to assert the invalidity of the amendment.

*Section 6 Who May Complain of the Illegality of the Tax*

The general rule is of course that those only who would be injured by the operation of the illegal tax may complain of the illegality. Alaska Steamship Co. v. Mullaney, 9 Cir., 180 F.2d 805, 815.

The lien of the illegal tax has already attached to the properties of plaintiff and intervenor by reason of Chapter 10's levy in section 3. The complaint in this action states facts sufficient to constitute a suit

to remove a cloud and also to prevent future clouds. The properties of intervenor and plaintiff, real and personal, are subject to tax.

The plaintiff and intervenor, as owners of mining claims outside of cities would be directly injured to the extent of any territorial tax collected from them under the provisions of Chapter 10.

These liens constituted clouds upon the owner's title prior to the bringing of this action and at all times thereafter. The evidence shows that further clouds will be cast upon property of plaintiff and intervenor on or prior to the second Tuesday in October 1950, if they are not prevented by this suit. The lien of the Tax Commissioner's district will attach to plaintiff's property July 1, 1950.

 Under the above mentioned conditions, plaintiff and intervenor have shown that the tax imposed by Chapter 10 is illegal and that plaintiff and intervenor have a right to raise the question.

The Cities of Douglas and Juneau and Fairbanks refrained from providing for the collection of the territorial 1% tax. Consequently, when the intervenor paid its taxes, it did not (though its complaint in intervention states to the contrary in paragraphs VII and VIII) pay any part of the territorial tax. The tax levy of the City of Fairbanks was 20 mills, of Juneau 20 mills and Douglas 15 mills, but in each instance the resolution fixing such rates clearly showed that it was for the school and municipal purposes of the cities and was not a levy of the territorial tax.

The Tax Commissioner has levied and assessed and is attempting and threatening to collect said territorial 1% tax for 1949 from the intervenor and the plaintiff. This tax levy has created a lien upon all of the property of plaintiff and intervenor and also casts a cloud upon the same. Taxes for the calendar year of 1950 will create a lien upon all of property of the plaintiff and intervenor when the assessment of such property is made which will be the month of October or prior thereto, 1950, unless there is restraint by the court.

In Port Angeles Western R. Co. v. Clallam County, D.C., 20 F.2d 202, 204, it stated "The allegations of the bill, for present purposes, must be taken as true, and jurisdiction in a court of equity to remove a cloud upon the title to personal property is recognized".

It was stated the taxes being spread without limitations upon the tax rule against the railway property owned by the United States, cast a cloud upon such property, to the removal of which equity alone can do substantial justice.

The court quoted with approval from the following cases as follows:

Union Pacific R. Co. v. Cheyenne, 113 U. S. 516, 5 S.Ct. 601, 28 L.Ed. 1098: "Even the cloud cast upon his title by a tax under which such a sale could be made would be a grievance which would entitle him to go into a court of equity for relief".

In Ohio Tax Cases, 232 U.S. 576, 34 S. Ct. 372, 374, 58 L.Ed. 737, the court said: "Right to invoke the equity jurisdiction is clear; for the act specifically makes the tax a lien upon the real estate of appellants, from the cloud of which they sought to free it * * * and the bills alleged threatened irreparable injury through the enforcement of penalties * * * ".

In Allen v. Hanks, 136 U.S. 300, 10 S. Ct. 961, 965, 34 L.Ed. 414, it was said: "Must she remain inactive while the sale proceeds, and until the purchaser obtains and has recorded the Marshal's deed to her lands, and then bring an action to have the deed cancelled, and the sale set aside, as clouds upon her title? It needs no argument to show that the existing levy upon appellee's land constitutes itself a cloud upon her title which, if not removed, and the proposed sale prevented, will injure the salable value of the lands, and otherwise injuriously affect her rights".

In Rogers v. Nichols, 186 Mass. 440, 71 N.E. 950, it was stated, "A bill can be maintained to prevent clouding as well as to remove a cloud from title to real estate".

Section 16-1-113, A.C.L.A., provides that all general taxes levied shall be liens upon the property assessed. The statute as to

the organization of independent school districts and their powers and the ordinances of the independent school districts and of the Cities of Fairbanks, Juneau and Douglas provide that the taxes levied shall be liens upon assessment being made. Section 37-3-54; section 16-1-35 (9).

The evidence shows that plaintiff and intervenor lacked an adequate remedy at law, there being no law authorizing a city or independent school district or the Territory itself to permit the payment of taxes under protest and refund the same if the law under which they were levied was declared invalid by the courts. The nearest thing to such a statute was section 48-7-1, A.C.L.A. It provided that whenever taxes were paid to the Tax Commissioner under protest and covered into the treasury, the Tax Commissioner could if it was approved by the Attorney General and the Teasurer issue a voucher on the general fund for the refund of the tax money.

There was no provision for paying any interest upon the money paid under protest, a matter in itself sufficient to make the remedy inadequate. Procter & Gamble Distributing Co. v. Sherman, D.C., 2 F. 2d 165; Southern California Telephone Co. v. Hopkins, 9 Cir., 13 F.2d 814, 815; Hopkins v. Southern Cal. Telephone Co., 275 U.S. 393, 48 S.Ct. 180, 72 L.Ed. 329.

In affirming 13 F.2d 814, 815, the Supreme Court said: 275 U.S. at page 399, 48 S.Ct. at page 182, 72 L.Ed. 329, "In no permitted proceeding at law could interest upon payments be recovered for the time necessary to obtain judgments. * * * We find no clear, adequate remedy at law. The equity proceeding was permissible".

Also most or all of the taxes mentioned in this case would not be paid to the Tax Commissioner but to the cities or independent school districts and so never covered into the Treasury of the Territory.

Still further, if the Tax Commissioner issued a voucher against the general funds of the territory to repay the tax paid under protest, there would be no assurance that the voucher would be paid promptly.

At best, the section above mentioned applied to payments to the Tax Commissioner and did not constitute any authority for payments to be paid under protest to municipal corporations or independent school districts.

Consequently, said section did not provide an adequate remedy to plaintiff or intervenor.

That interest cannot be recovered on taxes paid under protest and returned unless the statute especially so provides, see U. S. v. Nez Perce County, Idaho, 9 Cir., 95 F.2d 232; U. S. v. Lewis County, Idaho, 9 Cir., 95 F.2d 236; Board of Com'rs of Jackson County v. U. S., 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed. 313.

If the plaintiff or intervenor had paid the territorial tax under protest, the bringing of a number of suits would have been necessary as in every instance where the property was outside the Tax Commissioner's taxing district, the tax was either given wholly to the collecting agency (the cities) or given largely to the extent of their school expenses to the independent school districts. Thus plaintiff would have been compelled to bring 3 actions: one against the Fairbanks independent school district, the City of Fairbanks and the Territory. The intervenor would have been compelled to bring 5 suits, to wit: against the City of Juneau, the Juneau independent school district, the City of Douglas, the Douglas independent school district, and the Territory of Alaska. The bringing of the present suit therefore prevented a multiplicity of actions.

The whole of Chapter 10 is built around sections 3 and 4 which provide for the levy of the tax and its disposition. As those two sections are clearly invalid, there is nothing remaining in the chapter of any force, so the whole chapter is invalid, except as to boats or vessels under Ch. 88, S. L.A. 1949.

Inasmuch as the evidence in this case did not show any property of plaintiff or intervenor to be in a public utility district or that there were any parcels of land lying partly in one taxing district and partly in another, there has been little or no discussion of their effect upon the problems of plaintiff and intervenor.

Each party shall pay the costs and disbursements incurred by them or it except that the defendants the City of Fairbanks and the Fairbanks independent school district and their officers, shall recover their costs and disbursements against the plaintiff and intervenor, but such costs shall not include attorney's fees.

Counsel for plaintiff and intervenor may draw Findings of Fact, Conclusions of Law and Decree in accordance with the foregoing opinion.