# Patterson, Admx., *v.* Pennsylvania R. R., Appellant.

*Negligence—Railroads—Brakeman — Interstate and intrastate commerce.*

1. Where intrastate and interstate acts, in the movement of railroad cars, are mingled, or at times alternate, there is no separation, and the interstate feature predominates.

2. Employment follows interstate transportation and begins when the workman, on a carrier's premises, makes a forward move to serve in that traffic or employment, and ends only after he has completely dissociated himself therefrom.

3. Where a brakeman starts in interstate service, the mere expectation that he will be called upon to perform a task in intrastate commerce, is not sufficient to take the case out of the federal statute.

4. Where the forward movement of a train is wholly interstate and the return movement with commerce of any kind cannot be determined until such transportation takes place, the nature of the interstate work will change and the disassociation therefrom take place only if the return movement is all intrastate.

5. If the forward movement is all interstate, and there is no return commerce whatever, the interstate employment will continue until the trainman ends his employment for the day, and if he is negligently killed on the return trip, suit for the death may be maintained under the Federal Act.

*Railroads—Workmen's compensation—Judgment under Federal Act and judgment under State Act.*

6. Where a widow has secured an award under the State Compensation Act for the death of her husband, a railroad brakeman, and also a judgment in a suit as administratrix under the Federal Act, the court will take such action as may be necessary to prevent the collection of both claims.

Argued October 2, 1925. Appeal, No. 125, March T., 1925, by defendant, from order of C. P. Allegheny Co., Jan. T., 1924, No. 2711, refusing defendant's motion for judgment n. o. v., in case of Anna Patterson, Administratrix of George R. Patterson, deceased, *v.* Pennsylvania

VOL. CCLXXXIV—37

Railroad.   Before MOSCHZISKER, C. J., FRAZER, WALL-
ING, KEPHART, SADLER and SCHAFFER, JJ.  Affirmed.

Trespass for death of plaintiff's husband.   Before
CARNAHAN, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $15,355.   De-
fendant appealed.

*Error assigned* was order refusing judgment for de-
fendant n. o. v., quoting bill of exception.

*Robert D. Dalzell,* of *Dalzell, Fisher & Dalzell,* for ap-
pellant.—Defendant was not engaged in interstate com-
merce at the time of the happening of the accident:
Shanks v. R. R., 239 U. S. 556; C., B. & Q. R. R. v. Har-
rington, 241 U. S. 177; Illinois Cent. R. R. v. Peery, 242
U. S. 292; Erie R. R. v. Welsh, 242 U. S. 303; O'Donnell
v. R. R., 273 Pa. 375.

*J. Thomas Hoffman,* for appellee.—On both reason
and authority, plaintiff's decedent was engaged at the
time of his injury in interstate commerce,—twice over,
if such may be: Erie R. R. v. Winfield, 244 U. S. 170;
O'Donnell v. R. R., 273 Pa. 375; Director General v.
Bennett, 268 Fed. 767; Dennison v. Director General,
293 Fed. 333.

OPINION BY MR. JUSTICE KEPHART, November 23, 1925:
Deceased, a freight brakeman, was assigned to duty on
a regular run from Verona, the home or lay-over for the
crew operating this train, to Sharpsburg and return.
This run was a day's work.  The major movement was
toward Sharpsburg; the return brought back to Verona
what, if any, cars were to be had at Sharpsburg or Cole-
man, an intermediate point.  If there were none such, the
return was "light" or "empty" with engine and caboose.

On the morning in question, he left Verona with a train of 55 cars, part interstate. On reaching Sharpsburg, the train was placed in the yard, and the crew, with engine and caboose, without cars or other freight, returned light to Verona. Midway on this return journey, they were placed on track No. 2 to await favorable opportunity to continue to destination. While waiting, the conductor had a tower operator ascertain whether any cars were at Coleman to be sent to Verona. Meanwhile, a ground switchman sent, by mistake, a passenger train on track No. 2 instead of track No. 4. The result was a collision, in consequence of which the death of the brakeman occurred as he sat in the caboose. This location was not a regular stopping place to receive orders for cars at the Coleman yard, no cars were received, and the crew was returning home.

The question we must decide is whether Patterson, the brakeman, on the return trip, was performing an act so directly or immediately connected with the previous act (engagement in interstate commerce) as to be a part of it, or a necessary incident thereto (Southern Pacific Co. v. Industrial Accident Commission, 251 U. S. 259; New York Central & Hudson River R. R. Co. v. Carr, 238 U. S. 260, 263, 264; Shanks v. Delaware, Lackawanna & Western R. R. Co., 239 U. S. 556, 558), or as being the "necessary complement of the trip out": Illinois Central R. R. Co. v. Peery, 242 U. S. 292. This will depend on whether the return, "running light," "empty" or without commerce, was a separate and independent act. If not, would the possibility of moving cars from Sharpsburg and Coleman to Verona change the engagement or did the stop for orders en route home affect that result?

The question, in view of the adjudicated cases, might be regarded as close. As the court below held the service continuous,—appellant taking no exception to the manner of its submission to the jury, contending, from the undisputed testimony, the return to Verona was intrastate,—we should not disturb the conclusion reached

unless intrastate service clearly appears. After careful consideration of federal cases, we stated, in Koons v. Phila. & Reading Ry. Co., 271 Pa. 468, 470, this rule as governing the kind of service involved in the movement of railroad cars: "Where intra- and interstate acts are mingled, or at times alternate, there is no separation. The interstate feature predominates and by it the questioned act must be judged......Employment follows interstate transportation and begins when the workman, on a carrier's premises, makes a forward move to serve in that traffic or employment and ends only after he has completely dissociated himself therefrom." This was followed in O'Donnell v. Director General, 273 Pa. 375, 379.

Patterson was admittedly engaged in interstate service up to Sharpsburg. The question is then, at what point thereafter, if any, did he disassociate himself therefrom, or what was the nature of the work being done at the time of the injury?

Considering the two questions as one, we have an admitted interstate service, which continued until the crew reached Verona and he had disassociated himself therefrom, unless there was an interruption: Erie R. R. Co. v. Winfield, 244 U. S. 170. To find if there was an interruption in that service we must exclude as ineffective for that purpose the facts that the crew might have received cars at Sharpsburg or Coleman yard, and as part of their duty would have been required to bring them to Verona. They did not receive any cars or any orders, and had they received orders alone even for an intrastate movement it would not alter the case. "The mere expectation that plaintiff would presently be called upon to perform a task in interstate commerce is not sufficient to bring the case within the act" (Illinois Central R. R. Co. v. Behrens, 233 U. S. 473, 478; Erie R. R. Co. v. Welsh, 242 U. S. 303, 306), nor would like expectation for intrastate service take the case out of the statute. The movement of 55 cars to Sharpsburg was interstate.

The return movement with commerce of any kind was uncertain, it always was as to this run. It only became certain when that commerce was actually transported, and then the nature of the interstate work changed and the disassociation therefrom took place only if the return movement was all *intrastate.* There were no orders to move cars of any character on the return trip; that trip was from an interstate movement toward no commerce of any kind. It must therefore have been the necessary complement of the outbound movement, so incidental in its nature as to be a part of the former. This case follows Erie v. Winfield, 244 U. S. 170. There the engineer of a switching engine, engaged in what was decided to be interstate service, took his engine to the place where it was to remain for the night, then started to leave the yard by crossing some tracks. While so leaving he was run down and killed. The court said (p. 173) : "In leaving the carrier's yard at the close of his day's work the deceased was but discharging a duty of his employment. See North Carolina R. R. Co. v. Zachary, 232 U. S. 248, 260. Like his trip through the yard to his engine in the morning, it was a necessary incident of his day's work and partook of the character of that work as a whole, for it was no more an incident of one part than of another. His day's work was in both interstate and intrastate commerce, and so when he was leaving the yard at the time of the injury his employment was in both." Had he been killed while on the engine taking it to the place where it was to stay for the night the result would have been the same. The engagement was interstate. This case was followed by Director General v. Bennett, 268 Fed. (C. C. A.) 767, and Dennison v. Payne, 293 Fed. (C. C. A. 333,) both with facts very much similar to the case at bar.

Defendant relies on Illinois Central R. R. Co. v. Peery, 242 U. S. 292. The facts in the case are the same up to the return movement home. While it was uncertain in that case whether the crew would return with commerce,

the fact was they did, and, because they did so, the court held them to the character of commerce hauled, local freight. We have this decided difference between the case at bar and Erie R. R. Co. v. Welsh, 242 U. S. 303, also relied on by appellant: (1st) there, the last movement was not inter- but intrastate; that should be enough; (2d) all of the hauling of cars that was to be done in the day's work was not finished; (3d) after placing the intrastate car on a classification track, they placed the caboose at another point then took their engine for water, after which they went to the yardmaster's office for orders for further shifting, which turned out to be interstate work. The injury occurred while alighting at the yardmaster's office. The facts controlling the Winfield Case were not present there. The Welsh Case dealt with but one interstate movement and with all the intervening steps before the accident: Chicago, Burlington & Quincy R. R. Co. v. Harrington, 241 U. S. 177, does not help appellant. There the employee was injured while switching cars of coal owned by the company, which had been stored for some time, to chutes or bins to be unloaded, the coal thereafter to be used in locomotives in both intra- and interstate movements. Nor does Shanks v. Delaware, Lackawanna & Western R. R. Co., 239 U. S. 556, where an accident happened while putting up fixtures in a machine shop used to repair locomotives used in interstate commerce.

The case was rightly decided by the court below. As to the objection that the award under the Workmen's Compensation Act might permit double recovery, appellee having perfected her rights thereunder with an award in her favor against appellant, the court below will take such action as may be necessary to prevent payment of both claims in her own right under the state law and as administratrix under the Federal Act. Attention is called to our Compensation Act, and decisions of this court thereunder as affecting these rights.

Judgment affirmed.