Northern Pacific Railway Company, Respondent, vs. Industrial Commission of Wisconsin and another, Appellants.

*November 8—December 3, 1929.*

244

For the appellant Bloxham the cause was submitted on the brief of *Cadigan & Cadigan* of Superior.

For the respondent there was a brief by *Hanitch, Hartley, Johnson & Fritschler* of Superior, attorneys, and *D. F. Lyons* and *Frederic D. McCarthy,* both of St. Paul, Minn., of counsel, and oral argument by *Clarence J. Hartley.*

FRITZ, J.  The learned circuit judge concluded that at the time of the injury Thomas A. Bloxham was employed in interstate commerce, and that, consequently, the defendant commission had no jurisdiction to enter an award.

There is no dispute as to the facts.  Plaintiff operates a railway system extending from the city of Superior, Wisconsin, through Minnesota to the Pacific coast.  At the city of Superior it maintains, as an integral part of its system, an ore dock for the transfer, from its railway cars to vessels, of ore which is in transit from Minnesota mines, via the city of Superior, to other ports on the lower Great Lakes. As the capacity of the vessels is from 7,000 to 12,000 tons, it is necessary, in order to provide a supply for uninterrupted loading when the vessel arrives, to accumulate ore for two or three days in pockets on the dock, from which it is run through spouts into the vessels.

Bloxham was killed on the ore dock as he was setting in motion electrical machinery to raise a spout from a vessel into which he and others, similarly in the employment of the plaintiff, were spouting ore.  They had partly loaded the vessel, and a fellow employee was lowering another spout to continue loading.  The ore which Bloxham was loading was part of a shipment destined to Cleveland, Ohio, and had been hauled by plaintiff from the Minnesota mines to its Superior ore dock, and there dumped by plaintiff's employees into its pockets for transfer to the vessel.  The plaintiff's service was not fully performed until it had completed the delivery of the ore into the vessel.  For that service it was paid at a rate, approved by the Interstate Commerce Commission, of ninety-one cents per ton, which was

computed on the basis of eighty-one cents for transportation to the dock, and ten cents for the transfer at the dock. That rate was obtainable only on through shipments from the Minnesota mines to ports on the lower Great Lakes.

The plaintiff's services in relation to the ore which Bloxham was engaged in loading when he was injured, including the transfer and reloading of the ore at its Superior dock, as well as the hauling thereof from the Minnesota mines to that dock, were all performed in furtherance of an interstate shipment and interstate commerce. Even if plaintiff's only service had been the handling on its dock at Superior of this shipment of ore, which was in transit from Minnesota to Ohio, that service was in interstate commerce. *Superior v. Allouez Bay Dock Co.* 166 Wis. 76, 80, 164 N. W. 362.

"When freight actually starts in the course of transportation from one state to another it becomes a part of interstate commerce. The essential nature of the movement and not the form of the bill of lading determines the character of the commerce involved. And generally when this interstate character has been acquired it continues at least until the load reaches the point where the parties originally intended that the movement should finally end." *Ill. Cent. R. Co. v. De Fuentes,* 236 U. S. 157, 163, 35 Sup. Ct. 275.

"The change in the method of transportation by floating to carriage on a vessel did not affect the continuity of the interstate passage, if such a passage was intended by the parties and had begun, any more than did shipment by local railroad bills of lading from a point in a state to a port of the same state, for shipment by vessel to a foreign port, prevent its being interstate or foreign commerce." *Hughes Brothers Timber Co. v. Minnesota,* 272 U. S. 469, 474, 47 Sup. Ct. 170; *Railroad Comm. v. Worthington,* 225 U. S. 101, 32 Sup. Ct. 653; *Texas & N. O. R. Co. v. Sabine Tram Co.* 227 U. S. 111, 33 Sup. Ct. 229; *Railroad Comm. v. Texas & Pac. R. Co.* 229 U. S. 336, 33 Sup. Ct. 837; *Philadelphia & R. R. Co. v. Hancock,* 253 U. S. 284, 40 Sup. Ct. 512; *Carson Petroleum Co. v. Vial,* 279 U. S. 95, 49 Sup. Ct. 292.

Inasmuch as plaintiff's handling of that shipment of ore at its Superior dock was in interstate commerce, Bloxham's operation of the machine to raise the spout which he was using to reload that ore was so closely related to interstate transportation as to be part of it.

"It is too plain to require discussion that the loading or unloading of an interstate shipment by the employees of a carrier is so closely related to interstate transportation as to be practically a part of it." *Baltimore & O. S. W. R. Co. v. Burtch,* 263 U. S. 540, 44 Sup. Ct. 165.

In *Graber v. Duluth, S. S. & A. R. Co.* 159 Wis. 414, 417–418, 150 N. W. 489, this court said:

"Commerce between a point in one state and a point in another is interstate commerce. Those engaged in carrying on such commerce, either as principal or employee, are engaged in interstate commerce, and one while actually performing a service essential to or so closely connected with such business as to be substantially a part of it,—an act in the carrier service of the interstate work,—though not necessarily exclusive of all intrastate features, is in the performance of interstate service in the carrying on of interstate commerce, within the meaning of the federal Employers' Liability Act."

That, in substance, is the well established rule. *Pedersen v. Delaware, L. & W. R. Co.* 229 U. S. 146, 33 Sup. Ct. 648; *St. Louis R. Co. v. Seale,* 229 U. S. 156, 33 Sup. Ct. 651; *Philadelphia & R. R. Co. v. Hancock,* 253 U. S. 284, 40 Sup. Ct. 512; *Erie R. Co. v. Szary,* 259 Fed. 178, affirmed in 253 U. S. 86, 40 Sup. Ct. 454; *Erie R. Co. v. Collins,* 259 Fed. 172, affirmed in 253 U. S. 77, 40 Sup. Ct. 450.

In view of that rule, Bloxham was clearly engaged in interstate commerce when he was injured. Sec. 102.08 (4), Stats., expressly provides that the provisions of the Wisconsin compensation act "shall not apply to employees of such common carriers injured or killed while the common

carrier and the employee are engaged in interstate commerce." Consequently, the Industrial Commission had no jurisdiction to enter the award in favor of Bloxham's widow, and plaintiff was entitled to have that award vacated, as the circuit court adjudged.

In view of that conclusion, there is no occasion to consider at this time the validity and effect of the settlement and the release executed by the defendant Bessie Bloxham on December 31, 1926.

*By the Court.*—Judgment affirmed.