CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD COMPANY, Respondent, vs. INDUSTRIAL COMMISSION, Appellant: MUELLER and others, Defendants.

*January 8—February 5, 1935.*

For the appellant there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the respondent there was a brief by *Bender, Trump & McIntyre* of Milwaukee, and oral argument by *Rodger M. Trump.*

FRITZ, J.  The Industrial Commission contends that the circuit court erred in setting aside an award for compensation to be paid by the plaintiff, the Chicago, Milwaukee, St. Paul & Pacific Railroad Company, for the death of Paul Mueller as the result of injuries sustained on June 11, 1932, while in the employment of the plaintiff.  The only question on this appeal is whether the commission erred in holding that under the facts, which are undisputed, Mueller was not engaged, at the time of his injury, in interstate transportation or commerce.  It is conceded that, if he was then engaged in such transportation, the Federal Employers' Liability Act (45 USCA, §§ 51-59; U. S. Comp. Stat. §§ 8657-

8665) is applicable and that the state compensation act is inapplicable. *St. Louis, San Francisco & Texas R. Co. v. Seale,* 229 U. S. 156, 158, 33 Sup. Ct. 651, 57 L. Ed. 1129; *Kalashian v. Hines,* 171 Wis. 429, 435, 177 N. W. 602; *Northern Pacific R. Co. v. Industrial Comm.* 200 Wis. 243, 246, 227 N. W. 948. It is also conceded that whether work which an employee was doing when injured was so closely related to interstate transportation as to be a part of it, depends solely upon the nature of the work in which he was engaged at the time of his injury. *Efaw v. Industrial Comm.* 200 Wis. 137, 141, 227 N. W. 249; *Sheboygan Airways, Inc., v. Industrial Comm.* 209 Wis. 352, 361, 245 N. W. 178; *New York, N. H. & H. R. Co. v. Bezue,* 284 U. S. 415, 52 Sup. Ct. 205, 76 L. Ed. 370, 77 A. L. R. 1370, 1373.

Mueller, Fred L. Dettman, and others were in the employment of the plaintiff at one of its freight depots and platforms in Milwaukee to load and unload freight shipped in either intrastate or interstate commerce. When articles brought on shippers' trucks to plaintiff's depot for shipment were too heavy to be unloaded by the shipper's employees, it was customary for the plaintiff to have its employees, such as Mueller and Dettman, assist in such unloading, and to use, in that connection, appliances provided by the plaintiff. In accordance with that custom, Dettman and Mueller were assisting, at the time of the latter's injury, in unloading a boiler, weighing six hundred and fifty pounds, from a truck, on which it had been brought to plaintiff's depot by Ray Gerhardt, an employee of the Milwaukee Reliance Boiler Works, for shipment to Kansas City, Missouri, under a proposed bill of lading, which had been prepared, as customarily, by the shipper, to be issued by the plaintiff upon the unloading of the freight on plaintiff's platform. Upon arriving at the depot, Gerhardt told plaintiff's employee, who was in charge, that the boiler was to be shipped to Kansas City, and that employee directed where it was to be unloaded onto plain-

tiff's platform and that Mueller and Dettman were to assist in such unloading. Thereupon Gerhardt backed the truck up to the platform, and Mueller and Dettman brought a heavy iron plate and an iron roller provided by plaintiff for use in unloading such freight. The three men placed the plate so that it extended from the depot platform to the rear of the truck. They put the roller under the boiler and rolled it to the rear end of the truck, whereupon the truck floor sagged down so that it was lower than the platform and the plate was at too steep an incline. To remedy that condition, Gerhardt drove the truck forward, while Mueller and Dettman stood on opposite sides of the plate to hold it up. They were unable to do so, and the plate, and also the roller, dropped to the pavement. Gerhardt helped them raise up the plate. He then backed up the truck and applied the brake, but the truck's rear wheels, which were on the roller, suddenly moved backward, and Mueller was crushed between the truck and the platform.

Upon those facts the commission found that, although, at the time of Mueller's injury, it was the intention of the Boiler Works to ship the boiler over plaintiff's railroad to Kansas City, it "had not yet been delivered onto the platform" of plaintiff, "and had not yet been accepted for shipment so as to have been in interstate commerce or interstate transportation," and that it "was still within the possession and control" of the Boiler Works, "with the right on the part of that company to still decline to ship" it over plaintiff's railroad; and therefore the commission concluded that at the time of injury "the boiler was not in interstate transportation or in interstate commerce," and Mueller "was not engaged in interstate commerce or interstate transportation."

The propositions that, while the boiler was in the process of being unloaded onto plaintiff's platform by Mueller, Dettman, and Gerhardt, it had not passed entirely out of the possession and control of the Boiler Company, and that as

it had not yet been finally accepted for shipment by the railway company, the Boiler Company might still have declined to ship it, are not of controlling significance in determining whether the work which Mueller was actually doing at the time of his injury was "so closely related" to interstate transportation "as to be practically a part of it." That, under the cases cited above, is all that is necessary to render the Federal Employers' Liability Act applicable and the state compensation act inapplicable. In *Baltimore & O. S. W. R. Co. v. Burtch,* 263 U. S. 540, 44 Sup. Ct. 165, 68 L. Ed. 433, the court held that "the loading or unloading of an interstate shipment by the employees of a carrier is so closely related to interstate transportation as to be practically a part of it," and brings the employees within the protection of the Federal Employers' Liability Act, 45 USCA, §§ 51-59; U. S. Comp. Stat. §§ 8657-8665. Substantially similar conclusions were reached in *New York, C. & St. L. R. Co. v. Slater* (C. C. A.), 23 Fed. (2d) 777 (affirmed in 277 U. S. 605, 48 Sup. Ct. 601), in respect to work performed by a railway employee in loading stringers, for which no bill of lading had been issued, but which were intended for interstate shipment and were subsequently actually so shipped; in *Illinois Central R. Co. v. Porter* (C. C. A.), 207 Fed. 311, in which a railway employee, engaged to wheel interstate freight from a warehouse into a car to be transported in interstate commerce, was injured by being crushed against the side of a car by the negligence of another truckman; and in *Delaware, L. & W. R. Co. v. Busse* (C. C. A.), 263 Fed. 516, in which a watchman, employed by a railroad on a pier used solely in receiving and forwarding freight in interstate commerce, was injured while assisting in readjusting a door of the pier shed, so that it could be opened to permit taking out freight for delivery to consignees. See also *Northern Pacific R. Co. v. Industrial Comm., supra; Patterson v. Pennsylvania R. Co.* 284 Pa. 577, 131 Atl. 484. The question as to

whether work performed by a railway employee in respect to an article which has been tendered for interstate transportation is or is not, in so far as the application of the state compensation act is concerned, so closely related to interstate transportation as to be practically a part thereof, is not to be solved in the light of precedents determining the ownership or location in law, for the purpose of taxation or otherwise, or the respective rights and obligations of a shipper and a carrier, or a shipper and a consignee, in respect to articles which are intended for transportation, but as to which there has not been complete acceptance or exclusive possession by the carrier.

Regardless of what the Boiler Company's legal rights and obligations would have been in relation to the boiler, if it had subsequently declined to ship it, the fact is that it had been actually hauled to the plaintiff's platform and there offered to plaintiff with the declared intention and for the sole purpose of transportation to Kansas City under the proposed bills of lading, which had been prepared, as customarily, by the shipper; and that, under those bills of lading, and as originally intended, that boiler was duly accepted and transported by the plaintiff in interstate commerce. In so far as Mueller and Dettman were concerned, the work which they had commenced to perform by bringing to the truck the iron plate and roller that were necessary and provided by their employer for unloading such heavy freight, and by assisting in moving the boiler toward the platform, and in replacing the iron plate to facilitate that moving, was all part of the plaintiff's customary, initial, and necessary service in starting the boiler on the intended interstate transportation. That service was being performed by the plaintiff, through its employees, because that boiler had been duly tendered for transportation over its railroad, and the only transportation then contemplated, and thereafter completed, was the interstate transportation to Kansas City. That boiler was not at

plaintiff's platform for any other purpose. Consequently, the work which Mueller was actually doing in the performance of plaintiff's customary, initial, and necessary service to facilitate the transportation of such heavy articles, was clearly so closely related to interstate transportation as to be practically a part thereof.

*By the Court.*—Judgment affirmed.