MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY, Appellant, vs. INDUSTRIAL COMMISSION and another, Respondents.

*March 18—April 12, 1938.*

For the appellant there was a brief by *Hayes & Hayes,* attorneys, and *William A. Hayes* of counsel, all of Milwaukee, and oral argument by *William A. Hayes.*

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

WICKHEM, J. The facts are not in dispute. Upon the basis of them plaintiff contends that the Industrial Commis-

sion was wholly without jurisdiction to make an award under the Wisconsin Workmen's Compensation Act for the reason that at the time of the injury applicant was engaged in service incidental to interstate commerce. It was said in *Chicago, M., St. P. & P. R. Co. v. Industrial Comm.* 217 Wis. 272, 258 N. W. 608, that where the work of an employee is so closely related to interstate commerce as to be a part of it, his rights are governed solely by federal law, his employment is not within the jurisdiction of the Wisconsin Industrial Commission, and he is not entitled to any of the benefits of the Wisconsin Workmen's Compensation Act. The sole question here is whether at the time of the injury this employee was engaged "in work so closely related to" interstate transportation "as to be practically a part of it." *Shanks v. Delaware, L. & W. R. Co.* 239 U. S. 556, 36 Sup. Ct. 188, 189, 60 L. Ed. 436. This requires a consideration of the facts.

Applicant resided in Minnesota and commuted by streetcar to his work in Wisconsin. At the time of his injury he was working on an engine, No. 711, in stall No. 4 of a roundhouse in Superior. The roundhouse is located in the yards of the Duluth-Superior terminal. These are partly in Wisconsin and partly in Minnesota. The Duluth-Superior division of this railroad is made up of one thousand one hundred miles of main line, and extends into North Dakota, Minnesota, and Wisconsin. Trains Nos. 162 and 163 are regularly scheduled trains on this route, one an eastbound and one a westbound train. The locomotive in question had long been assigned to these trains, and was of a type peculiarly suited to the trains in question, which combined freight and passenger service. Because of a rule of the interstate commerce commission, the engine could not be operated after May 11, 1934, unless a hydrostatic test and certain repairs had theretofore been made. The engine was with-

drawn from service May 5th because it could not complete its regular run prior to May 11th. The repairs were finished a few days prior to July 3d, and the test made on that day. ' Thereafter, the engine was returned to its former service. On May 16th, applicant and other workmen were stripping the engine, that is, taking off various parts preparatory to making repairs. While chiseling a piece of brass, a fragment flew out and struck the applicant in the eye. To these facts the test heretofore referred to is to be applied.

In *Industrial Accident Comm. v. Davis,* 259 U. S. 182, 42 Sup. Ct. 489, 491, 66 L. Ed. 888, the applicant under the California act was drilling and tapping the boiler of a locomotive when a piece of steel lodged in his eye. The locomotive had been used in interstate commerce exclusively and was destined so to be used again. It was sent to repair shops for general overhauling on December 1, 1918, and was not returned to service until February 25, 1919. The accident happened February 1st. It was held by the California court that the California commission was without jurisdiction. This was reversed by the United States supreme court. It was said:

"The federal act gives redress only for injuries received in interstate commerce. But how determine the commerce? Commerce is movement, and the work and general repair shops of a railroad, and those employed in them, are accessories to that movement, indeed, are necessary to it, but so are all attached to the railroad company, official, clerical or mechanical. Against such a broad generalization of relation we, however, may instantly pronounce, and successively against lesser ones, until we come to the relation of the employment to the actual operation of the instrumentalities for a distinction between commerce and no commerce. In other words, we are brought to a consideration of degrees, and the test declared, that the employee at the time of the injury must be engaged in interstate transportation or in work so closely related to it as to be practically a part of it, in

order to displace state jurisdiction and make applicable the federal act. And there is a difference in the instrumentalities. . . . But equipment out of use, withdrawn for repairs, may or may not partake of that character according to circumstances; and among the circumstances is the time taken for repairs—the duration of the withdrawal from use. Illustrations readily occur. There may be only a placement upon a sidetrack or in a roundhouse—the interruption of actual use, and the return to it, being of varying lengths of time, or there may be a removal to the repair and construction shops, a definite withdrawal from service and placement in new relations; the relations of a workshop, its employments and employees having cause in the movements that constitute commerce, but not being immediate to it.

"And it is this separation that gives character to the employment, as we have said, as being in or not in commerce."

See also *New York, New Haven & H. R. Co. v. Bezue,* 284 U. S. 415, 52 Sup. Ct. 205, 76 L. Ed. 370.

It is our conclusion that in the instant case the extent of the repairs as well as the duration of the period during which there was an interruption of use in interstate commerce brings this case within the doctrine of the *Davis Case, supra.* These were not mere running repairs, but were important enough both in quality and extent as well as the time required for them to bring the engine into a new relationship, that of the workshop. Under these circumstances, the jurisdiction of the Wisconsin commission was correctly held by the trial court to have attached. The case of *New York Central R. Co. v. Marcone,* 281 U. S. 345, 50 Sup. Ct. 294, 74 L. Ed. 892, cited by plaintiff, does not sustain its position, it being found under the circumstances of that case that the locomotive had not been withdrawn from service. It is difficult to avoid the conclusion that a locomotive that is put into the roundhouse for repairs in May and not returned to service until July, and the repairs upon

which involve a complete stripping from the engine of its moving parts and a thorough overhauling, has been withdrawn for that period from service in interstate commerce.

The case of *National Labor Relations Board v. Jones & Laughlin Steel Corp.* 301 U. S. 1, 57 Sup. Ct. 615, 81 L. Ed. 893, is cited by plaintiff as supporting its position. In this case the constitutionality of the National Labor Relations Act was attacked on the ground that the act was really a regulation of labor relations and not of interstate commerce. The act was held constitutional, and with respect to the point here involved, it was said:

"The congressional authority to protect interstate commerce from burdens and obstructions is not limited to transactions which can be deemed to be an essential part of" interstate or foreign commerce. "Burdens and obstructions may be due to injurious action springing from other sources. The fundamental principle is that the power to regulate commerce is the power to enact 'all appropriate legislation.' . . . Although activities may be intrastate in character when separately considered, if they have such a close and substantial relation to interstate commerce that their control is essential or appropriate to protect that commerce from burdens and obstructions, congress cannot be denied the power to exercise that control."

If this case supports plaintiff's position, it, of course, repudiates the distinction noted in the *Davis Case* and incorporates shopwork into interstate commerce as a matter of law. However, it is apparent that the court was dealing with the power of congress so to regulate labor relations as to avoid interferences with and obstructions to interstate commerce, and the power is held to be more extensive in this direction than with reference to a federal employers' liability act. This is manifest from an examination of *Virginian R. Co. v. System Federation,* 300 U. S. 515, 57 Sup. Ct. 592, 604, 81 L. Ed. 789, in which the court considered the

constitutionality under the commerce clause of portions of the Railway Labor Act. There the court said:

"The *Employers' Liability Cases,* 207 U. S. 463, 498, which mentioned railroad repair shops as a subject beyond the power to regulate commerce, are not controlling here. Whatever else may be said of that pronouncement, it is obvious that the commerce power is as much dependent upon the type of regulation as its subject matter. It is enough for present purposes that experience has shown that the failure to settle, by peaceful means, the grievances of railroad employees with respect to rates of pay, rules or working conditions, is far more likely to hinder interstate commerce than the failure to compensate workers who have suffered injury in the course of their employment."

It is clear to us that there is a vital distinction between the power of congress with respect to restraining, prohibiting, or regulating matters that may constitute a burden upon interstate commerce and its jurisdiction to prescribe the measure of liability for injuries occurring in interstate commerce. We discover nothing in the last two pronouncements of the United States supreme court that evidences a purpose to abandon the doctrine of the *Davis* and *New Haven Cases.* It follows that the Wisconsin commission had jurisdiction to award compensation and that the judgment must therefore be affirmed.

*By the Court.*—Judgment affirmed.