Martin, J.
 

 The facts are not in dispute. At the hearing before the Industrial Commission the parties entered into a written stipulation of facts. They are in substance as follows:
 

 
 *384
 
 Plaintiff is a common carrier by railroad, operating an extensive railroad system from the city of Superior, Wisconsin, westward through various other states to the North Pacific coast. As a part of its railroad, system it owns and operates four ore docks in the city of Superior, which are used exclusively for the interstate transportation of iron ore. All of the ore handled on the four docks is transported in ore cars by plaintiff from iron mines on the Iron Range located in the state of Minnesota. The ore docks contain tracks on which the ore cars are hauled, and the ore is dumped from the cars into pockets in the dock, from which it is loaded by gravity into ore boats. This ore is then transported by ore boats to ports on the lower Great Lakes. The ore docks are not used for the storage of iron ore and the iron ore is handled in a continuous movement through the docks from the point of origin on the Iron Range in Minnesota to ports on the lower Great Lakes and the states of Illinois, Ohio, Michigan, New York, Pennsylvania, and Indiana. Because the Great Lakes are not navigable during the winter on account of ice conditions, no ore is handled through the docks during that period. It is customary to make necessary general repairs to the docks each year from about the middle of December to the middle of April. In 1941 the general repairs were begun on the docks on November 7th. These repairs were máde for the purpose of keeping the docks in serviceable condition to handle ore in interstate commerce during the navigation season of 1942. The first shipment of iron ore through the docks during the navigation season of 1941 was on April 4th, and the last boat was loaded from the docks on December 5th.
 

 Christ Plammer was fatally injured on December 24, 1941, while engaged in work connected with the general repairs of the ore docks. He had worked on the ore docks from May, 1941, to the time of the accident. From May until Novem
 
 *385
 
 ber 7, 1941, he was a member of a crew engaged in painting and making such repairs as were necessary to be made during the time the docks were in operation. On November 7, 1941, he became a member of the crew engaged in making general repairs which were made for the purpose of putting the docks in shape to receive and load iron ore during the following season. When injured Hammer was acting as signal man on a locomotive crane. This crane was equipped with a derrick boom and was engaged in loading timbers from a pile on the ground to flatcars about thirty-five feet from the ground on a trestle approach to one of the ore docks, designated dock No. 3. The timbers were being moved out upon dock No. 3, to be used in repairs to that dock. While so employed, the locomotive crane on which he was standing was struck by another locomotive crane, which was also being used in connection with the hauling of material for the repairs of the dock, causing Hammer to fall to the ground, a distance of about thirty-five feet. Hammer was unmarried, but was survived by a son, Stanley Hammer, who had been legally adopted by him. Stanley was sixteen years old at the time of the death of his father.
 

 On January 30, 1942, Marjorie L. Cohen, special admin-istratrix of the estate of Christ Hammer, commenced an action in the district court of St. Louis county, Minnesota, under the Federal Employers’ Liability Act to recover damages for the death of Christ Hammer for the benefit of his next of kin, the said Stanley Hammer. In the complaint in that action it was alleged:
 

 “That at the time of the injury to plaintiff’s intestate as hereinafter set forth said defendant [Great Northern Railway Company, a corporation] was actually engaged in business as a common carrier of freight and passengers between different states, and plaintiff’s said intestate was at the time of said injury likewise engaged in business as an employee of said defendant in interstate commerce in connection with the man
 
 *386
 
 agement and operation of a locomotive crane which was at said time being used in such interstate commerce on the Al-louez docks owned and operated by said defendant at Superior, Wisconsin.”
 

 In that action, upon stipulation of the parties, judgment in favor of the special administratrix of the estate of Christ Hammer and against Great Northern Railway Company was entered on February 14, 1942,'in the sum of $2,422.50, which judgment was paid and satisfied in full on February 17, 1942, and distribution of the money was made by said district court in accordance with* the provisions of the Federal Employers’ Liability Act.
 

 Prior to the 1939 amendment, the Federal Employers’ Liability Act, so far as here material, provided:
 

 “Every, common carrier by railroad while engaging in commerce between any of the several states . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier. . . .” (45 USCA, sec. 51.)
 

 On August 11, 1939, the Federal Employers’ Liability Act was amended by adding thereto the following:
 

 “Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purpose of this act, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the- benefits of this act and of an act entitled ‘An act relating to the liability of common carriers by railroads to their employees in certain cases.’ ” (53 U. S. Stats, at L. p. 1404, ch. 685, 45 USCA, sec. 51.)
 

 This appeal presents two questions : (1) Where ore docks are used exclusively for handling iron ore in interstate com
 
 *387
 
 merce, is an employee engaged in interstate commerce while making repairs to the ore docks during the wintertime when the docks are not in operation? (2) Is a judgment, recovered by decedent’s administratrix under the Federal Employers’ Liability Act, for the benefit of an adopted son,
 
 res ad-judicata
 
 on the issue of interstate commerce in a proceeding brought by decedent’s mother under the Wisconsin Workmen’s Compensation Act ?
 

 The court below held that the employee was not engaged in interstate commerce; also held that the judgment recovered by decedent’s administratrix under the Federal Employers’. Liability Act was not
 
 res ctdjudicata.
 
 As to the first question, the court based its decision on what this court held in
 
 Minneapolis, St. P. & S. S. M. R. Co. v. Industrial Comm. 227
 
 Wis. 563, 279 N. W. 42. In Chicago,
 
 M., St. P. & P. R. Co. v. Industrial Comm.
 
 217 Wis. 272, 258 N. W. 608, the court said that where the work of an employee is so closely related to interstate commerce as to be a part of it, his rights are covered solely by federal law, his employment is not within the jurisdiction of the Wisconsin Industrial Commission, and he is not entitled to any of the benefits of the Wisconsin Workmen’s Compensation Act.
 

 In the instant case the Industrial Commission and the court below found that Christ Hammer, when fatally injured, was not engaged in interstate commerce because the docks were not in operation at the time of the accident; that the nonuse of said ore docks during the period when there was no navigation on the Great Lakes removed said docks entirely from commerce for such period, and that therefore during this nonnavigation period Hammer was an employee subject to the provisions of the Workmen’s Compensation Act of Wisconsin.
 

 The 1939 amendment to the Federal Employers’ Liability Act has broadened its scope, and the test as to whether an employee of a carrier is within the act in any particular case depends on whether any part of his duties as such employee shall be the furtherance of interstate or foreign commerce, or
 
 *388
 
 shall, in any way directly or closely and substantially, affect such commerce; if it does, such employee is within the protection of the act. In
 
 Ermin v. Pennsylvania R. Co.
 
 (D. C., E. D., N. Y., 1941) 36 Fed. Supp. 936, 940, the court said:
 

 “This case involves the construction of the Federal Employers’ Liability Act as amended by the act of congress, approved August 11, , 1939. The court is informed that there are no reported decisions construing this amendment.
 

 “The discussions in congress indicate that it was the intent of the lawmakers to bring within the scope of the Federal Employers’ Liability Act all employees whose work at the time of injury was not in actual interstate transportation or a part of it,
 
 but any part of whose work was in furtherance of interstate commerce, or in any way affected such commerce directly, closely and substantially.”
 

 In that case a brakeman was injured while employed as a member of a switching crew engaged in moving from one place in the state to another place in the same state dead engines which had been out of service for several months and which were then to await repairs, and which had been theretofore and would thereafter be used in interstate commerce.
 

 In a later case,
 
 Agostino v. Pennsylvania R. Co.
 
 decided by the same court July 2, 1943 (D. G), 50 Fed. Supp. 726, 728, the court said:
 

 “The sole question presented — Was the plaintiff engaged in interstate commerce within the purview of the Federal Employers’ Liability Act as amended by the act of congress, approved August 11, 1939? . .
 

 “The weight of authority is to the effect that the amendment should be liberally construed so as to extend the protection of this act to all employees, any part of whose duties furthers or affects interstate commerce ‘in any way.’ ”
 

 In that case the plaintiff, when injured, was working on new construction consisting of a roadbed and tracks of approximately eight thousand feet in length to be connected at both
 
 *389
 
 ends with existing tracks and which was to replace a portion of such existing tracks. Plaintiff was injured December 31, 1940, while he and other employees were spreading cinder ballast for surfacing one of the new tracks. The actual transportation of revenue freig'ht in interstate commerce began about one month after the accident. The court said, page 729:
 

 “Was the plaintiff’s work in ‘furtherance’ of interstate commerce ? Did it ‘in any way’ further or ‘affect’ interstate commerce ? Can it be said that the plaintiff’s work was not ‘in any way’ in ‘furtherance’ of interstate commerce? Did it not substantially ‘affect’ such commerce?
 

 “The conclusion seems inescapable that the construction work, while new, was only an improvement such as an extension, alteration, replacement or repair and, therefore, the plaintiff was engaged in interstate commerce.”
 

 In
 
 Edwards v. Baltimore & O. R. Co.
 
 (7th Cir. 1942) 131 Fed. (2d) 366, 369, in reference to the 1939 amendment to the Federal Employers’ Liability Act, the court said:
 

 “Despite any question as to whether plaintiff might have re-, covered under the original act (see
 
 New York Central Ry. v. Marcone,
 
 281 U. S. 345, 50 S. Ct. 294, 74 L. Ed. 892), it is clear that he is within the scope of the amendment. Under the original statute experience demonstrated continued difficulty in ascertaining when the work of an employee was part of interstate commerce. The amendment, much wider in scope, was inspired by a desire to avoid such confusion. Congress’ intent to include any employee who performs services •which in any way further or affect interstate commerce is clear.
 
 Ermin v. Pennsylvania Ry.,
 
 D. C. N. Y., 36 F. Supp. 936;
 
 Southern Pac. Co. v. Ind. Acc. Comm.,
 
 Cal. App. 113 P. 2d 768, 770, affirmed by California supreme court in 19 Cal. 2d 883, 120 P. 2d 888;
 
 Piggue v. Baldwin,
 
 154 Kan. 708, 121 P. 2d 183;
 
 Louisville & N. Co. v. Potts,
 
 Tenn. Sup., 158 S. W. 2d 729. Inasmuch as this locomotive was used in interstate commerce and was destined to resume such service as soon as repaired, plaintiff, engaged in repairing it and fitting it for further commerce, thereby furthered and substantially affected interstate commerce within the meaning of the law.”
 

 
 *390
 
 Respondents’ contention that the 1939 amendment to the Federal Employers’,Liability Act was intended to apply only to those cases where the nature of the employment constantly shifted between intrastate and interstate activities cannot be sustained. As said in
 
 Ermin v. Pennsylvania R. Co., supra,
 
 the intent of the amendment was to bring within the scope of the act all employees, any part of whose work was in furtherance of interstate commerce, or in any way affected such commerce directly or closely and substantially. There is no ambiguity in the language of the amendment. We must assume that congress meant what it said in clear, certain language.
 

 Though the docks were not in operation in the actual handling of ore at the time Hammer was fatally injured, it is clear that the work he was eng'aged in was in furtherance of interstate commerce or in some way directly or closely and substantially affected interstate commerce. The instrumentality which he was repairing was used exclusively in interstate com--merce. The repairs were being made for the purpose of keeping the ore docks in serviceable condition for the transportation of ore in interstate commerce. Plammer had been engaged in repair work on the docks from May, 1941, to the date of the accident, December 24, 1941. From May to November 7th he painted and made such other repairs as were necessary during the time the docks were in operation, and from November 7th to the day he was injured he and his fellow workmen were engaged in making general repairs. Suppose the accident happened during the season of navigation and the* docks had been closed because of a strike which lasted a month, or four months, and during the period of the strike Hammer had continued in the same line of repair work and was injured. Could it be successfully maintained that the nonuse of the docks during’ the strike period removed them from commerce? Clearly not. The finding of the Industrial Commission that the work being done by Hammer at the time of his injury did not affect commerce directly or closely and substantially in any
 
 *391
 
 way is contrary to the stipulated facts on which the award was based.
 

 The case of
 
 Minneapolis, St. P. & S. S. M. R. Co. v. Industrial Comm., supra,
 
 which the commission and the court below thought controlling, is readily distinguishable from the instant case. In that case there was a physical removal of the locomotive in question from its regular runs because of a rule of the interstate commerce commission that the engine could not be operated after May 11, 1934, unless a hydrostatic test and certain repairs were made. The engine was withdrawn from service May 5th because it could not complete its regular run prior to May 11th. Speaking of the repairs required, the court said, page 566:
 

 “These were not mere running repairs, but were important enough both in quality and extent as well as the time required for them to bring the engine into a new relationship, that of the workshop.”
 

 Further, the court said:
 

 “It is difficult to avoid the conclusion that a locomotive that is put into the roundhouse for repairs in May and-not returned to service until July, and the repairs upon which involve a complete stripping' from the engine of its moving parts and a thorough overhauling, has been withdrawn for that period from service in interstate commerce.”
 

 It will.be noted that this case was decided prior to the 1939 amendment'to the Federal Employers’ Liability Act. It is also important to note that the locomotive, because of its condition, could not be operated after May 11th under the rules of the interstate commerce commission.
 

 Respondent argues that the decision of this court in
 
 Minneapolis, St. P. & S. S. M. R. Co. v. Industrial Comm., supra,
 
 followed
 
 the
 
 holding of the United States supreme court in
 
 Industrial Acc. Comm. v. Davis
 
 (1922), 259 U. S. 182, 42 Sup. Ct. 489, 66 L. Ed. 888. That case also involved
 
 *392
 
 the physical removal of a locomotive from commerce. The repairs necessitated a dismantling of the engine, and a general overhauling. It was taken out of interstate commerce on December 19th and was in repair shops of the railway company until the 25th of the following February. The employee was injured on February 1st, while repairing the engine. The court held that the employee at the time he was injured was not then employed in interstate commerce. That decision was rendered prior to the 1939 amendment to the Federal Employers’ Liability Act.
 

 In
 
 Oregon Short Line R. Co. v. Gubler
 
 (8th Cir. 1925), 9 Fed. (2d) 494, 495, the court said:
 

 "Whether an employee is engaged in interstate commerce at the time of an accident is sometimes a very close question, becoming almost one of degree at times. This is particularly true where the employee is not engaged in the operation of in-strumentalities of interstate commerce, but in repairs, replacement or new construction in connection with such commerce. The decisions of the supreme court and of this circuit are to the effect that such work if in the nature of repair or replacement or in such close proximity to instrumentalities of interstate commerce that they may be affected by the work done constitutes interstate commerce, while purely new construction does not.” See cases there cited.
 

 It should be noted that this decision was rendered before the 1939 amendment to the Federal Employers’ Liability Act.
 
 Certiorari
 
 in this case was denied by the United States supreme court in 273 U. S. 709, 47 Sup. Ct. 100, 71 L. Ed. 851.
 

 We hold that Christ Hammer was engaged in interstate commerce when injured. It therefore follows that the Industrial Commission of Wisconsin was without jurisdiction; and that the judgment appealed from must be reversed with directions to vacate and set aside the award. This conclusion renders unnecessary any consideration of the action brought by the administratrix o'f the estate of Christ Hammer under the Federal Employers’ Liability Act, in which a judgment was
 
 *393
 
 rendered against the appellant herein, in the district court of St. Louis county, Minnesota, on February 14, 1942, in the sum of $2,422.50.
 

 By the Court.
 
 — The judgment of the circuit court is reversed, and the cause is remanded with instructions to enter judgment vacating the award of the commission. No costs allowed.